JOSEPH P. GALLAGHER *et al.* *vs.* ZONING BOARD OF REVIEW
OF THE CITY OF PAWTUCKET.

DECEMBER 6, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a petition for certiorari to review the action of the zoning board of review of the city of Pawtucket granting with certain conditions the application of Joseph E. Koppelman, Inc. and Koppelman Realty Co. for an exception or variance. We issued the writ and in compliance therewith the respondent board has duly certified the records to this court for our inspection.

It appears therefrom that Elijah C. Koppelman is the sole stockholder of Joseph E. Koppelman, Inc. and Koppelman Realty Co., two separate corporations; that Koppelman Realty Co. is the owner of a parcel of land at 727 East avenue in the city of Pawtucket designated as lots Nos. 620, 406 and 407 on assessor's plat No. 63, and consisting of approximately 97,000 square feet; that said lots more fully set forth in the board's decision are located in a residence B district; and that Joseph E. Koppelman, Inc. is a tenant operating a wholesale and retail flower business.

It further appears that on January 11, 1962 the two corporations jointly filed an application for an exception or variance pursuant to the provisions of G. L. 1956, §§45-24-13 and 45-24-19, and sec. 26.18(8) (a) and (b) of the 1953 revised ordinances of the city of Pawtucket. The applicants seek permission to demolish the existing buildings, to construct on the property a building for a retail market, flower shop and bank, and to pave some 50,000 square feet for a parking lot in connection with the retail and commercial businesses.

After due notice the board heard the application. Numerous witnesses were heard, petitions pro and con as well as several exhibits were received, all resulting in a voluminous record.

At the close of the hearing the instant petitioners moved to have Joseph E. Koppelman, Inc. dropped as an applicant

on the ground that the uncontradicted evidence clearly demonstrated that the corporation was a mere tenant and did not possess such an interest in the land as would entitle it to obtain the relief sought. This motion was taken under advisement.

Thereafter, on April 24, 1962 the board unanimously voted to grant the application. The decision of the board is as follows:

"The Board viewed the premises and observed the following:

"1. Immediately east of the property in question is East Avenue, for 100 feet, and residences for 100 feet.

"2. Across East Avenue to the north and east are residences; to the south are several businesses and business buildings.

"3. Immediately south of the property in question is Lafayette Street.

"4. Directly across Lafayette Street, at the corner of East Avenue, is a gasoline filling station, which leads to many other commercial buildings along that side of East Avenue. The remainder of the opposite side of Lafayette Street, is residences.

"5. Immediately west of the property in question, is Dartmouth Street. Across Dartmouth Street are residences.

"6. Immediately north of the property in question is Pidge Avenue for 350 feet and residences for 269 feet. Across Pidge Avenue, near the corner of Dartmouth Street is a 16-unit apartment house.

"7. On the southeasterly corner of the property in question is a retail flower shop 50′ x 60′.

"8. On the northwesterly corner of the property in question is a boiler room approximately 40′ x 60′, containing three horizontal return tubular boilers; and adjoining said building is a radial brick smoke stack approximately 75 feet in height; also adjoining said boiler room is a large walk-in refrigerator box.

"9. On the remainder of the property in question, are six large greenhouses of obsolete design, and covering approximately 72,000 square feet.

"10. That the store is presently used for the sale of flowers; the boiler room and greenhouses are in operation and appear in poor condition."

"After considering the foregoing observations and the testimony presented at the hearing, the Board found:

"1. That the literal enforcement of the ordinance would cause an unnecessary hardship on the applicant insofar as the present use of the premises is wholesale and retail growing and selling of flowers, and the tract of land is almost entirely occupied by buildings which are not adaptable to other uses, that said business is presently unprofitable, and the redevelopment of said property for the uses permitted in a Residence 'B' District, by demolishing the existing buildings, greenhouses, and smokestack, could be accomplished only at a great loss to the applicant.

"2. That the proposed use of the property, with the buildings as shown on the plans submitted, and with the restrictions set forth in this decision, will not tend to depreciate the surrounding property values.

"3. That the streets surrounding said property can amply absorb any increase in traffic from the proposed business and thus will not cause any traffic hazards in this vicinity.

"4. That with the existence by exception to the Zoning Ordinance of a gasoline filling station at the corner of East Avenue and Lafayette Street, and a large apartment house on Lowden Street and the non-conforming uses in said neighborhood, the proposed use of the property will be in harmony with the character of the neighborhood, appropriate to the buildings permitted in this district and possessive of a reasonable tendency towards promoting the public convenience and welfare.

"5. That the proposed use is reasonably necessary for the convenience and welfare of the public, since there is no adequate facility in the neighborhood to service the requirements of the public.

"Therefore this application was Granted subject to the following conditions and restrictions:

"1. That there shall be erected along the westerly lot line of lot #400, and along the southerly lot lines of lots numbered 400, 401, 402, 403 and 405, on Tax Assessor's Plat No. 63, a cedar screen-type fence approximately six feet in height, and said fence shall taper to approximately three and one-half feet in height, within twenty feet of any sidewalk line.

"2. The parking lot shall be graded and drained with catch basins connected to sewers, so that surface water shall not drain over sidewalks into the streets.

"3. All floodlights on the premises shall be of the vapor type, and plans showing the location and design, including specifications, of all exterior signs and floodlights to be installed on the premises, shall be submitted to the Board of Appeals for approval before installation."

It is to be noted that in its decision the board makes no reference to petitioners' motion and they argue here that such failure was error. We are in accord with this contention. The only evidence on this issue was the testimony of Elijah C. Koppelman, president and treasurer of both corporations. He testified that Koppelman Realty Co. was the sole owner of the land and buildings and that Joseph E. Koppelman, Inc. was a tenant conducting a wholesale and retail flower business. Asked specifically if the latter corporation were a lessee, he replied, "There was an original lease and we have let it continue. Q. You let it continue? A. We haven't renewed it. We let it continue."

There was no further clarification of the tenant's status and absent the terms of the original lease we can only conclude that Joseph E. Koppelman, Inc. is a tenant at sufferance. The board urges, however, that since Elijah C. Koppelman is the sole stockholder of both corporations, it is a consolidated operation and that in effect the two corporations constitute a single interest in the premises. We cannot agree with this contention. They are separate legal entities and each must stand or fall on the basis of its respective status.

The board further urges that, even so, *Ralston Purina Co. v. Zoning Board,* 64 R. I. 197, is so broad as to be authority for the proposition that a tenant at sufferance has a sufficient interest to support an application for a variance or exception. We cannot agree. In the *Ralston Purina Co.* case, *supra,* we held only that a *lessee* has sufficient interest to support an appeal from a denial by the building inspector of an application for a building permit.

The elimination of the tenant from consideration as an applicant, however, is not fatal to the property owner, Koppelman Realty Co., as such. We shall, therefore, proceed to review petitioners' appeal by certiorari on the status of the realty company without regard to the evidence as it may relate to the application by the tenant.

In this regard it is pertinent to observe that although the tenant corporation showed a substantial loss for a period of two prior years, the realty corporation showed a profit resulting from rental. It follows that the granting of a variance to the applicant owner was so arbitrary as to constitute an abuse of discretion. The testimony of the sole stockholder of the corporate owner that the company did realize some profit and that what he sought was larger profits precluded the board from finding that a literal enforcement of the ordinance constituted a denial of all beneficial use so as to amount to confiscation without compensation. *Winters* v. *Zoning Board of Review,* 80 R. I. 275; *Berard* v. *Zoning Board of Review,* 87 R. I. 244; *Gallagher* v. *Zoning Board of Review,* 90 R. I. 68, 154 A.2d 776.

In the *Gallagher* case this court passed upon a similar application and quashed the decision of the board, which found that the applicant would suffer unnecessary hardship from a literal enforcement of the ordinance. The evidence upon which the board based its decision at that time was identical in part with the evidence in the record presently before us, namely, the testimony of Elijah C. Koppelman that although the realty corporation was making

some profit, the granting of the application would result in a more profitable use. We further held that there was no legal evidence to support the application as one for an exception under the provisions of sec. 26.18(8) (a) and (b) of the revised ordinances of 1953.

In the instant cause the applicant sought an exception under the same provisions, which provide as follows:

"(a) To be in harmony with the character of the neighborhood, appropriate to the use or buildings permitted in such district, and possessive of a reasonable tendency towards promoting the public convenience, the public welfare or the public health;

"(b) Where such use or building is reasonably necessary for the convenience or welfare of the public;

"Provided, however, that any such approval shall be limited to the use or building as approved by the board of review and shall have the same limitations as those set out in section 26.13 of this Revision relative to nonconforming uses."

Here, however, evidence was offered in support of the application for an exception.

Frank A. Martin, Jr., a Pawtucket real estate expert, testified in support of the application. He stated that he had made a survey of the immediate area and that lots zoned for business are occupied by a drugstore, a barbershop, beauty parlors, a card shop, a tobacco shop and an insurance office. On cross-examination he conceded that these businesses were nonconforming uses at the time the original zoning ordinance was adopted in 1928, but pointed out that when the ordinance was revised in 1953 they were rezoned for business. The greenhouses, boiler room and flower shop were likewise nonconforming uses in 1928, but unlike other nonconforming uses were not rezoned for business in the 1953 revision.

Mr. Martin further testified that since the decision in *Gallagher* v. *Zoning Board of Review, supra,* an exception was granted for three lots immediately across on the south-

west corner of East avenue and Lafayette street on which a large gasoline station has been erected. He also stated that the most advantageous use to which the applicants' property might be adapted for residential purposes if sold as separate lots would not produce more than $63,000 against a purchase price of $85,000 paid some thirteen years previously, and that if the property were devoted to use as an apartment house it could not be profitable. It further appears from the record that even if profitable, an apartment house is not a permitted use. It was also Mr. Martin's testimony that the applicants' proposed use would not affect the value of surrounding property.

William E. Coyle, Jr., conceded by petitioners to be an expert in his field, testified for the applicants that he had made a survey and analysis of the area "from Sayles Avenue, Pawtucket Avenue, to Pidge, down to Alfred Stone over to Pleasant and back to Lyman, that section south to the Providence City line"; that his analysis revealed a total of 1,300 families in the area surveyed; that approximately 750 of these families reside on the westerly side of East avenue; that there is a total of seven or eight shops or stores servicing varying needs; and that in his opinion "there is an insufficient amount of service stores to provide for the normal demands of the residents in that area."

It was also his testimony that these stores or shops were sufficient for emergency needs, such as a loaf of bread or a bottle of milk, for some of the families in the area, but not for all; and that there is not a single market in the area sufficient to meet the needs required by all of the families.

Asked whether the furnishing of such services as was proposed by the applicants would tend to support the market value of the residential properties in the area surveyed, Mr. Coyle stated that residential areas tend to depreciate in value to the extent that they are not close to a bus line, church, school and adequate marketing facilities. He conceded that this is less so where there are two cars in the

family and in great detail in this regard gave it as his opinion that the westerly side of East avenue would be more greatly benefited than the easterly because of the higher income level of those residing in the latter area.

Roger T. Chandler, traffic engineer for the city of Providence, qualified as an expert in that field and testified in support of the application. He stated that he had made a traffic check of the daily and hourly peak volume of cars presently traversing the highways of immediate interest. His check revealed that East avenue has a daily volume of approximately 12,500 and an hourly peak volume of 1,300 cars. It was his opinion that East avenue is able to absorb an additional several thousand vehicles daily.

Further, Mr. Chandler testified that Pidge avenue, abutting the applicants' land to the north, had a daily volume of 1,500 cars and could absorb several thousand additional vehicles daily without serious congestion, and that Lafayette street, abutting the property to the south, was presently very little used and could readily absorb an appreciable increase in traffic without creating a serious problem.

The proposed plan, which is a part of the record, discloses that there would be only an entrance on East avenue with a combination 30-foot exit and entrance opening on Pidge avenue to the north as well as two on Lafayette street to the south, and parking facilities to accommodate 116 cars. Testifying from this plan, Mr. Chandler gave it as his opinion that Pidge avenue, the wider street with exits, would be most frequently used as a means of egress. Estimating on a basis of the parking lot capacity and the so-called peak hours, he stated that an additional 2,500 cars weekly would not result in traffic congestion.

Several individuals residing in the general area also testified in behalf of the application to the effect that the proposed facilities were needed and would tend to promote convenience and welfare.

Raymond J. McMahon, who resides on Glenwood avenue, testified that there was no longer any bus service on East avenue; that there were no adequate marketing facilities with a parking area; and that the elimination of soot caused by the present use would result in the improvement of the community.

Numerous remonstrants testified in opposition. Their objections were buttressed by R. Spencer Kyle, a real estate expert. His testimony directly contradicted that of Martin and Coyle. In Mr. Kyle's opinion the proposed supermarket would result in depreciating the value of adjoining properties and an average increase of seven or eight hundred cars a day. He further testified that in his opinion an apartment house on the premises would be a profitable venture or, alternatively, the property could be divided into single house lots which could be sold at an average price of $4,000. However, according to his testimony, on the basis of nineteen lots which he estimated a subdivision would achieve, the return to the applicants would be less than the original purchase price.

The tenor of the testimony of more than a score of remonstrants was to the effect that the proposed exception would constitute a nuisance, was not necessary, would depreciate adjoining properties and would result in traffic bottlenecks.

The petitioners contend in substance that, assuming the ordinance in question is not in violation of the enabling act nor an unwarranted exercise of the discretion vested in the board by the terms of the enabling act and the ordinance, both of which assumptions they refute, nevertheless there is no credible evidence to support the board's grant of either an exception or a variance.

We have heretofore concluded that the granting of a variance was arbitrary so that further discussion thereof serves no purpose. The contention that the board's findings as to an exception are not supported by credible evidence, how-

ever, is without merit. The record clearly discloses legal evidence and whether or not such evidence is credible goes to its weight, which this court will not ordinarily consider. *Roberts* v. *Zoning Board of Review,* 60 R. I. 202.

The petitioners further contend, however, that notwithstanding a determination by this court that there was legal evidence presented to the board on which it could rely, nevertheless the ordinance upon which the board purported to exercise its discretion is an invalid delegation of the powers conferred exclusively upon the city council by the terms of the enabling act. In support thereof they rely upon *Flynn* v. *Zoning Board of Review,* 77 R. I. 118.

In the *Flynn* case, however, the board acted upon an ordinance which, in providing for special exceptions, merely restated the language used by the general assembly in its delegation of authority to the city council. Commenting thereon, this court stated at page 125: "The council provided therein no rules or regulations, specific or general, that fix any limitation upon the exercise of the board's discretion. On the contrary it passed on to the board the complete power which it had received from the legislature under the enabling act."

Subsequent to our opinion in the *Flynn* case, the city council amended the applicable provisions of the ordinance as quoted, *supra.* Substantially similar language was considered by this court in *Woodbury* v. *Zoning Board of Review,* 78 R. I. 319, and *Barbara Realty Co.* v. *Zoning Board of Review,* 87 R. I. 100. In the latter case we held that unlike the ordinance considered in the *Flynn* case the provisions of the Cranston ordinance represented a vesting in the board, subject to definitely-expressed standards or limitations, of a discretion to grant exceptions in specific instances. We are of the opinion that the terms of the ordinance now before us are likewise valid.

Notwithstanding the validity of the ordinance, however, petitioners argue that the board abused its discretion in

that it misconceived the authority conferred upon it by the city council. They contend, referring to *Harte* v. *Zoning Board of Review*, 80 R. I. 43, that the board in the instant cause confused its authority to grant exceptions in special cases with the exclusive authority of the city council to make substantial changes in the lines of a zone. We are not so persuaded. In the *Harte* case, *supra*, and others, this court has held that zoning ordinances must be construed together with the terms of the enabling act and that in this regard the power to grant exceptions in special cases does not authorize a board of review to substitute its judgment for that of the city council, but rather that the board will exercise its discretion sparingly.

A careful analysis of the board's decision in the instant cause demonstrates that it was aware of and guided by such limitation on its authority. The board took an extensive view of the subject property and its general area. It made known its observations, commented on the character of the neighborhood, referred to the recent encroachment of a gasoline station, and obviously weighed the testimony adduced at the hearing in the light of its personal observations.

The petitioners finally contend that where the area of the land in question totals some 97,000 square feet the granting of an exception constitutes "spot zoning." In support of this contention they cite *Adams* v. *Zoning Board of Review*, 86 R. I. 396, *Allan* v. *Zoning Board of Review*, 79 R. I. 413, and *Matteson* v. *Zoning Board of Review*, 79 R. I. 121.

The petitioners comparing the area of the subject property with the area of land involved in the cited cases argue vigorously that this court has at least indicated that areas so extensive are not subject to an exception. While it is probably true that a board of review should not ordinarily grant an exception where the area of land involved is unusually extensive, such a circumstance is not necessarily controlling. See *Bergson Co.* v. *Zoning Board of Review*, 91 R. I. 134, 161 A.2d 414.

In the *Matteson* and *Allan* cases, *supra,* this court held that it was beyond the power of the board to determine that the area had been improperly zoned in the first instance or that the property in question was no longer adaptable to the uses for which it was originally zoned. Such determinations are clearly for the city council acting properly within the terms of the enabling act and not for a board of review. These cases are therefore not in point in that they are readily distinguishable as to the scope of the several decisions.

The *Adams* case, *supra,* is admittedly more in point but not controlling in the instant cause since the two cases are distinguishable. There, the board granted an exception to permit the construction of three apartment houses on a tract containing some 160,000 square feet located in a district zoned exclusively residential and restricted to single-family dwellings. We held that the effect of the board's action was to establish a multiple dwelling area within a district restricted to a single-family use. This was a substantial change in the lines of the zone, so extensive that it invaded the power reserved to the council by provisions of the enabling act.

Here, however, the present use is nonconforming and, according to evidence, more obnoxious than the proposed use contemplated by the exception. See *Costantino* v. *Zoning Board of Review,* 74 R. I. 316. It is not open to question that a board of review is without authority to grant an exception for the conversion of a nonconforming use to a business use, in a district predominantly zoned residential, solely by reason that other nonconforming uses in said district were subsequently rezoned as business uses. Such a reason would clearly constitute an usurpation of the powers exclusively delegated to the municipal legislature by the general assembly.

Neither is it open to question, however, that a board of review is not without jurisdiction to grant an exception

where the present use is nonconforming if an application for the same is made pursuant to the terms of a valid ordinance and supported by legal evidence, if in the sound discretion of the board the granting of the exception sought is conformable to the terms of the ordinance.

Moreover, the land herein under consideration, unlike that in the *Adams* case, *supra,* is not presently exclusively zoned residential. By the terms of the 1953 revised ordinances a number of parcels within the district were rezoned as business, thereby altering the character of the zone in which the instant applicants' property is located.

When the prior application of Koppelman Realty Co. was reviewed by this court, *Gallagher* v. *Zoning Board of Review,* 90 R. I. 68, we were reviewing the record then before us. On the basis of that record we were required to observe at page 70: "There is no evidence of any invasion of this general area by lower class use, nor is there any such evidence with reference to the entire residence B zone to the west of East avenue in which the applicant's land is situated."

The instant petition, however, must be considered on the basis of the record presently before us. So considered, we are not persuaded that the decision of the board was not so supported by legal evidence as to constitute an abuse of its discretion.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

CONDON, C. J., dissenting. I cannot agree with the majority because I am convinced that the board is without authority to grant an exception on the record before it. In my opinion it has under the guise of an exception undertaken to rezone this large tract of land and in doing so has usurped the power of the city council. I cannot distinguish this case from *Harte* v. *Zoning Board of Review,* 80 R. I.

43, and *Adams* v. *Zoning Board of Review,* 86 R. I. 396, wherein we clearly differentiated between the limited power of the board in granting exceptions and the more extensive power of the city council in rezoning.

In *Harte,* at page 52, we said: "The enabling statute provides in §2 for a proper procedure to amend an ordinance and to make substantial changes in the lines of a zone. This power is delegated to and is reserved for the city council. The board is not authorized by any language of the statute requiring the creation of a zoning board of review to substitute its discretion in all cases to achieve what is reserved for appropriate action by the council."

In *Adams* we expressly reaffirmed that view and at page 401 pointed out that the area involved under the exception granted was "so extensive" that the action of the board invaded the power reserved to the council by G. L. 1938, chap. 342, §2, of the enabling act. "The authority to grant special exceptions for changes in use which are so extensive," we further said, "was not intended by the legislature to be conferred upon boards of review, and when a board of review grants such an exception it acts in excess of its authority."

The rationale of those cases in my opinion precludes the possibility of upholding the board's decision in the case at bar. Here we have an extensive tract of 97,000 square feet. In an earlier case involving this same area, *Gallagher* v. *Zoning Board of Review,* 90 R. I. 68, 71 (October 23, 1959), we expressly stated that there was "satisfactory evidence in the record that if the nonconforming use were discontinued the land could be profitably developed for residential purposes in accordance with the requirements of the ordinance."

What has changed in the intervening three years? In my opinion nothing. It is true, as the majority opinion states, a number of nearby parcels were rezoned for business by the city council in 1953 but this fact cannot furnish

any ground for the board to do in effect the same thing under the guise of granting an exception. What the city council has done in the exercise of its legislative power to rezone is not a precedent upon which the board may rely to justify the exercise of its more limited discretionary power to grant relief by way of an exception in accordance with the specific provisions of the ordinance.

Try as I may to view this case in a light favorable to the applicants consistently with such provisions and the fundamental philosophy of the zoning law, I cannot escape the conviction that the board has usurped the power of the city council. Because it appears to me a clear case of usurpation, I am constrained to dissent. As such a case I fear it will haunt us in the days to come and make more difficult, if not impossible, adherence to the line of demarcation which we have heretofore drawn in *Harte* and *Adams*. If those cases are not to be overruled sub silentio we shall hereafter be hard put to justify them in the light of the precedent we now set in the case at bar.

*J. Frederick Murphy,* for petitioners.

*John A. O'Neill,* City Solicitor, for respondent board.

*William R. Goldberg, William F. McMahon,* for applicants.