Thomas T. WALSH

v.

CITY OF BREWER et al.

Supreme Judicial Court of Maine.

Feb. 5, 1974.

■■■■■

———◆———

Edward H. Keith, Bangor, for plaintiff.

Libhart & Ferris, by Wayne P. Libhart, Brewer, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Plaintiff, Thomas T. Walsh, instituted an action in the Superior Court (Penobscot County) and achieved judgment in his favor. The defendants [1] have appealed from the judgment.

Plaintiff filed his complaint on September 29, 1970, and was permitted to amend, on November 25, 1970, by substituting a new complaint, designated "Complaint for Declaratory Judgment", which included additional allegations concerning events occurring after the action had been commenced.

Basically, plaintiff claimed legal rights (1) to a license for a mobile home park on Eastern Avenue in Brewer under the City's "Mobile Home Park, Trailer Park and Camping Park" (hereinafter "Mobile Home Park") ordinance and (2) to a permit from the Zoning Board of Appeals approving the project, as required by the "Zoning" ordinance. Plaintiff asserted that various acts, and omissions to act, by defendants, had deprived him of such license and permit to which he was legally entitled and

thus he had been wronged by defendants. Plaintiff prayed, inter alia, that the Court enter a declaratory judgment that plaintiff (1)

" . . . is entitled to the issuance of a license to operate a mobile home park as proposed by him in his plan submitted to the Planning Board of the City of Brewer"

and (2)

" . . . is entitled under the zoning ordinance to the issuance of a permit to operate [such] . . . mobile home park . . . ."

Since we conclude, as hereinafter more fully explained, that on the record before us plaintiff lacks "standing to sue", we sustain the appeal of defendants and remand the case to the Superior Court for further proceedings.

I

Plaintiff's interest in developing a mobile home park in Brewer began in the spring of 1969.

The Brewer Mobile Home Park ordinance (Chapter 25 of the City Ordinances), enacted on March 10, 1969, had declared it

" . . . unlawful for any person to maintain or operate within the limits of the City of Brewer, any . . . , mobile home park . . . , unless such person shall first obtain from the licensing authority, [the Brewer City Council] a license therefor."

1. The defendants are: (1) the Municipality, City of Brewer; (2) Paul R. England, Rudolph O. Marcoux, Gerald D. Robertson, Avis J. McKechnie and Arthur P. Doe (who had been elected the members of the Brewer City Council at the Brewer Municipal Election held on October 12, 1970) acting in their capacities as the City Council of Brewer; (3) Charles F. Guild, Jr., Arthur W. Fowler, Jr., Albert M. Tennett, Wyman P. Gerry, Lendal C. Mahoney, and Richard E. Brooks in their capacities as the members constituting the Brewer Planning Board; (4) Harry Woodhead in his capacity as City Engineer of the City of Brewer; (5) William L. Wetherbee in his capacity as the City Building Inspector; (6) Raymond E. Wood in his capacity as Chief of the Brewer Fire Department; (7) Ralph W. Willoughby in his capacity as Chief of the Brewer Police Department; and (8) Charles W. Heddericg in his capacity as the City Health Officer.

Prerequisite to the issuance of such license were

"favorable recommendations in writing, from the Planning Board, the Building Inspector, Health Officer, Chief of Police and Chief of the Fire Department." (Section 302)

The Brewer Zoning ordinance (Chapter 24 of the City Ordinances), as it read in 1969 and at all times prior to November 12, 1970, placed the Eastern Avenue site of the mobile home park in the "single residence and farming" zone district. In that zone a mobile home park is

". . . permitted with the favorable recommendation of the Planning Board and after final approval of the [Zoning] Board of Appeals",

subject to the further conditions that any mobile home park shall be set back 200 feet from any right-of-way line and otherwise conform to requirements of the Mobile Home Park ordinance.

On April 28, 1970, plaintiff filed an application for a mobile home park license with the Brewer City Clerk, Arthur Verow. The Clerk forthwith referred the application to the Planning Board.

Plaintiff—his wife, Patricia A. Walsh accompanying him—first met with the Planning Board at the beginning of May, 1970.

On May 16, 1970 plaintiff and a surveyor whom he had engaged to assist him, Dana W. Bartlett, attended another meeting of the Planning Board. At this meeting the Board "approved" a plan for a mobile home park on Eastern Avenue

"with the qualification that 'final layouts and engineering arrangements should meet with the approval of the City Engineer and the Consultant Planner' (Mr. Hans Klunder)."

Plaintiff was given a list which, over and above "the regular requirements", included special requirements relating to the "State Plan", the manner and placement of mobile homes on both interior and exterior lots and distances to separate the western boundary and the eastern line of the property from any mobile home.

Plaintiff and Mr. Bartlett conferred on various occasions thereafter with the City Engineer (defendant, Harry Woodhead) and the Planning Consultant, Mr. Klunder.

On June 4, 1970 plaintiff filed with the Building Inspector (defendant, William L. Wetherbee) a request, addressed to the Zoning Board of Appeals, for

"permission to construct and operate a mobile home park of approximately 100 units, on Walsh Property located on the northerly side of Eastern Avenue."

The Building Inspector informed plaintiff that this request to the Zoning Board of Appeals would not be considered at the June meeting of the Board—to avoid giving the impression that the Board was "rushing it through."

On June 22, 1970 the Planning Board held another meeting at which the Eastern Avenue mobile home park project was on the agenda. The Planning Board had received a memorandum from Mr. Klunder, the City's Consultant Planner, in which he had expressed reservations about use of the property for a mobile home park but nevertheless indicated that "the latest layout of the proposed park was adequate." Plaintiff did not attend this June 22, 1970 meeting. Many Brewer residents were present, however, and voiced opposition to the mobile home project. The meeting produced no action by the Planning Board.

At a meeting of the City Council on June 29, 1970, a number of residents protested against the mobile home park being contemplated for Eastern Avenue. Plaintiff was not in attendance. At this meeting, the City Council passed an

"order . . . directing the City Solicitor to prepare a revision of the Mobile Home Park Ordinance (Chapter 25)."

At the beginning of July, 1970, plaintiff and his attorney were informed that, upon the direction of the Assistant City Solicitor, the Zoning Board of Appeals would postpone hearing the request of plaintiff for a mobile home park on Eastern Avenue

"until such time as they had been formally notified that the Planning Board had finally approved the plan."

The Planning Board held a meeting on July 6, 1970 at which plaintiff submitted the latest revision of a plan for the mobile home park. Approximately 200 persons expressed strong opposition. The Planning Board took no action. Thereafter, it continued with non-action during several months while the Brewer City Council proceeded to amend both the Brewer Mobile Home Park and Zoning ordinances.

A proposed revision of the Mobile Home Park ordinance was first presented to the City Council on July 13, 1970. Plaintiff appeared and objected to some of the modifications proposed. Suspending its rules, the City Council gave the revision first and second readings. At a special meeting held on July 20, 1970 the City Council again suspended its rules and gave final passage to a revised Mobile Home Park ordinance. It became effective July 30, 1970. The revised Mobile Home Park ordinance would permit a mobile home park on the Eastern Avenue site consisting of not more than 45 mobile home lots and would thus effectively frustrate the project envisioned by plaintiff, which involved 100 mobile home lots.

On September 10, 1970, the City Council received a proposed amendment to the Brewer Zoning ordinance placing the Eastern Avenue tract in the "single residence" zone in which use for a mobile home park was prohibited. The proposed amendment was submitted to the Planning Board. On October 28, 1970, the Planning Board advised the City Council that it did not recommend the change of the zone. Nevertheless, at a special meeting on November 2, 1970, the City Council suspended its rules, gave the amendment a first and second reading and, again suspending its rules, passed the amendment to be engrossed and finally enacted it, effective November 12, 1970.

It was because this amendment to the Zoning ordinance became effective after plaintiff had instituted his Court action that plaintiff was allowed to substitute a new complaint including allegations concerning the amendment to the Zoning ordinance and the interrelationships between it and the prior action of the Council in revising the Mobile Home Park ordinance. Plaintiff charged that the City Council had a

"purpose of preventing the development of the mobile home park proposed by the Plaintiff",

which it put into effect, thereby precluding

". . . the Planning Board, the Building Inspector, the City Engineer, the Chief of the Fire Department, and Chief of Police and the Health Officer from taking further action upon Plaintiff's license application."

After a full hearing, the presiding Justice found: (1)

"[p]laintiff was unable to get a written statement from the Planning Board either recommending or disapproving his proposal"

and (2)

"[t]here appears to be no justification for the Planning Board's refusal to act."

The presiding Justice further determined, as ultimate conclusions of law, that (1)

"The amendment to Chapter 24 (Zoning Ordinance) enacted on November 2, 1970 is not applicable to Plaintiff's application [regarding the Eastern Avenue site at issue] . . . nor to any subsequent application by Plaintiff for a license to operate under Chapter 25 [the Mobile Home Park, etc. Ordinance] or for a building permit under Section 1201 or a

certificate of occupancy under Section 1202 of Chapter 24, in relation to said site";

and (2)

"The amendment to Chapter 25 (Mobile Home Park, etc. Ordinance) enacted on July 20, 1970, is not applicable . . . to any application by Plaintiff for any exception, license, permit or certificate [as] mentioned . . . [in conclusion (1)] above, in relation to said site."

Accordingly, the presiding Justice ordered the Brewer Planning Board to (1)

" . . . resume consideration of Plaintiff's application . . . as to the proposed site and to apply thereto the provisions of both Chapter 24 and Chapter 25 as they existed prior to July 20, 1970";

and (2)

" . . . within a reasonable time . . ., signify in writing either their favorable recommendation or their refusal to recommend with the reasons therefor."

The presiding Justice made the same order directed to the Zoning Board of Appeals

"should the Plaintiff apply to them for final approval . . . ."

Additionally, the presiding Justice issued directives to the Planning Board, the Zoning Board and the other defendant officials of the City of Brewer to be effective should the administrative processes, as ordered by him to be resumed, produce particular results favorable to plaintiff's position.

## II

On appeal, defendants maintain that the action must be dismissed because plaintiff lacks "standing to sue." This issue was not raised before the presiding Justice; it is presented for the first time at the appellate level.

The facts relevant to the "standing" question are these. The complaint alleges the relationship of plaintiff to the Eastern Avenue site in question to be only: (1) plaintiff "is a resident of Brewer"; (2) plaintiff filed "applications" for the development and operation of a mobile home park on the Eastern Avenue site in connection with which he consulted with various City officers and agencies; and (3) plaintiff expended considerable sums of money for planning, preparation of plans, surveys and engineering. At hearing, it developed that: (1) at all times relevant the record legal title to the Eastern Avenue tract was not in the plaintiff but was in Beatrice Walsh, his mother, and Patricia Walsh, his wife; (2) plaintiff had never revealed in any of the applications filed by him, or in any of his various contacts or communications with the agencies or personnel of the City of Brewer, any details of his relationship to the Eastern Avenue tract or, specifically, that persons other than he were its legal owners—with the consequence that, as the parties stipulated at hearing,

"the only notice that the City, or any of the Defendants, would have had as to the record title, is whatever might be disclosed by the tax records of the City";

and (3) the only relationship borne by plaintiff to the Eastern Avenue site is that

"at all times the Plaintiff . . . had authority from . . . [the legal owners] to propose and develop and operate a mobile home park on that site, with all related utilities and appurtenances."

In the case law of Maine, and generally in the decisions of other jurisdictions, "standing to sue" has been applied in varying contexts causing it to have a plurality of meanings. It has been used in relation to the question of whether persons lacking a specially protected right, or who have not suffered injury uniquely different from that sustained by the public generally, may achieve a Court adjudication as to so-called "public wrongs." "Standing" has

been called upon as the concept to explain that judicial power is constitutionally confined to "cases or controversies" and to indicate that a party's relationship to a case, were it to be recognized as conferring standing, could result in an improper "advisory opinion." "Standing" has been utilized in conjunction with the problem of whether a party is presenting issues which are "ripe" for judicial evaluation. "Standing" has brought into focus the question of whether parties are the proper persons to be afforded "judicial review" of administrative or other governmental action. "Standing" has been invoked as a preliminary facet of the question of the Court's "subject-matter jurisdiction." Or "standing" has been the phraseology to express that a Court is exercising a "judicial restraint" to decline consideration of cases or issues which, for a multiplicity of reasons, may be deemed inappropriate for consideration by a Court.[2]

To avoid difficulties which can arise from these many connotations of the single phrase "standing to sue", we commence analysis of the "standing" issue, as it may appear to have rational bearing in the case at bar, by concentrating on the presiding Justice's conception of the gravamen of plaintiff's complaint—as revealed by him in his opinion and the particular concrete

relief he saw fit to provide in plaintiff's behalf.

Assuming the Brewer Mobile Home Park and Zoning ordinances, as well as the purported amendments to them, to be constitutional and otherwise legally valid,[3] the presiding Justice recognized that plaintiff had at least a *potential legal entitlement* to the license and permission to which plaintiff claimed rights. The presiding Justice further concluded that various actions and omissions to act by governmental officials had impaired plaintiff in his undertaking to assert and ultimately realize these potential entitlements and, precisely for this reason, plaintiff had been wronged. The presiding Justice deemed it necessary, therefore, to intervene in the administrative processes by issuing directives concerning their future course and the manner in which they should be conducted—thus to provide needed protections to the plaintiff in his efforts to make his potential legal entitlements an actuality.

On such approach by the presiding Justice, the question of plaintiff's lack of Court "standing" becomes interwoven with, and dependent upon, an antecedent question: whether plaintiff had lawful "standing" in the underlying administrative processes through which—by the mechanisms

---

2. In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) Chief Justice Warren observed that "standing 'serves, on occasion, as a shorthand expression for all the various elements of justiciability.'" (p. 99, 88 S.Ct. p. 1952)

Professor Kenneth Clup Davis has characterized the case law of "standing to sue" as a "confused logic-chopping about bewildering technicalities." (Davis, Standing: Taxpayers and Others, 35 U. of Chicago L.Rev. 601, 628)

3. The complaint of plaintiff attacked the constitutionality and other legality of the entirety of the Mobile Home Park ordinance, including its purported revision. It also claimed unconstitutional that part of the Zoning ordinance which prohibited the use of land in the "single residence" zone for mobile homes. Finally, the complaint charged illegality of

the amendment to the Zoning ordinance purporting to remove the Eastern Avenue tract of land from its original classification as lying in the "single residence and farming" zone district (in which a mobile home park was conditionally permitted) and to rezone it into the "single residence" zone (in which mobile homes were unconditionally prohibited).

As to all of these allegations in the complaint, the presiding Justice said:

"In view of the long-standing policy in this State by which the trial court generally refrains from pronouncing a statute unconstitutional, and in view of the answers which this Court makes . . ., it is unnecessary to a resolution of this case to provide answers . . . [concerning the aforesaid assaults upon the constitutionality, or legality in other respects, of the ordinances, in whole or in part, or the amendments thereto]."

of licensing, permits and certificates—important governmental regulation of the use of land in the City of Brewer for mobile home parks was, in part, effectuated. More concretely, the question is whether plaintiff had the kind of relationship to the Eastern Avenue site which the Brewer Mobile Home Park and Zoning ordinances recognized as sufficiently germane to the scope of their regulation to confer status upon the plaintiff as a proper "applicant" for a license, permit or certificate of occupancy.

On this subject the Brewer Mobile Home Park and Zoning ordinances omit express specification of any factors by which a person is granted, or denied, eligibility to be an "applicant." We cannot escape the conclusion, however, that the totality of the provisions of each ordinance reveals a basic conception from which emerges, implicitly, at least one indispensable and valid condition for "applicant" eligibility.

 The essence of the ordinances is the regulation and control of the *use* of land. The Mobile Home Park ordinance is directed to one kind of use—that involved in the "maintenance" or "operation" of a Mobile Home Park. The Zoning ordinance is concerned with the multitudinous uses, generally, to which land may be put—including "the construction of buildings and premises." As directed to the *regulation and control of the use* of land, the ordinances contain provisions dealing not only with land as such, as an "object" of use, but also with "persons" as the "subject-users" of land. A "person" is thus

germane to the regulatory scope of the ordinances insofar as he has an independently existing relationship to regulated land in the nature of a "title, right or interest" in it which confers lawful power to use it, or control its use. See: Packham v. Zoning Board of Review of the City of Cranston, 103 R.I. 467, 238 A.2d 387 (1968); Gallagher v. Zoning Board of Review of the City of Pawtucket, 95 R.I. 225, 186 A.2d 325 (1962); Cf. Smedberg et al. v. Moxie Dam Company, 148 Me. 302, 92 A.2d 606 (1952).[4]

The record before us discloses a lack of any such "title, right or interest" of the plaintiff in the Eastern Avenue tract—unless it be found in the stipulation that:

"at all times the Plaintiff . . . had authority from . . . [the legal owners] to propose and develop and operate a mobile home park on that site, with all related utilities and appurtenances."

 We conclude that so bare a statement of "authority" fails to establish that plaintiff had a "title, right or interest" in the land qualifying him as a proper "applicant" for a license, permit or certificate of occupancy under the Brewer Mobile Home Park and Zoning ordinances. Nothing indicates that the "authority" has a significant duration and is not revocable at any moment, at the will of the owners. The stipulation is silent on whether the "authority" derives from a written instrument or merely from casual and informal oral acquiescence which, in turn, suggests doubts concerning its legal enforcibility.

4. In reaching this conclusion, we intimate no opinion that it would exceed the lawful authority of a municipality *plainly and expressly* to authorize persons who lack "title, right or interest" in the land to be recognized as "applicants" for the licenses, permits or certificates by which the ordinances effect governmental regulation. We here decide only that when, as in the instances of the Brewer Mobile Home Park and Zoning ordinances, there is lacking a clear, affirmative and express provision to the contrary, such "title,

right or interest" in the land is implicitly a valid pre-condition of "standing" to be a proper "applicant" under the ordinances.

This interpretation appears reasonable and highly desirable, policy-wise, to ensure that, absent clear and unquestionable legislative expression manifesting a different legislative attitude, governmental officials and agencies should not be required to dissipate their time and energies in dealing with persons who are "strangers" to the particular governmental regulation and control being undertaken.

Finally, there is only a conclusory expression of "authority" without indication of its exact nature and source—whether as arising *by virtue of a fiduciary relationship* which would establish legally cognizable interests in the land, as distinguished from a mere permission to deal with the land (in which latter case, the "authority" would be insufficient to render plaintiff eligible, within the contemplation of the ordinances, *to be an "applicant" in his own name and right*).

We find the present record, therefore, insufficient to show that plaintiff was eligible as an "applicant" for a license, permit or certificate within the special and distinctive regulatory concerns manifested in the City of Brewer Mobile Home Park and Zoning ordinances. Cf. Packham v. Zoning Board of Review of the City of Cranston, 103 R.I. 467, 238 A.2d 387 (1968).

■ Thus lacking "standing" in the first instance to invoke, and have continuingly operative in his behalf, the administrative functioning by which it was calculated that regulatory licenses, permits or certificates shall be issued, plaintiff must lack "standing to sue" and call upon a Court to provide indirectly precisely those administrative processes to which he had been validly denied direct and original access by the provisions of the controlling ordinances. A contrary conclusion would yield a contradiction in terms, or, at least, a pragmatic incongruity too gross to be worthy of judicial acceptance.

■ Neither can plaintiff properly achieve "standing" for Court interposition on the grounds that regardless of his *right* to be an "applicant", (1) plaintiff had *in fact* been an "applicant", (2) various of the defendants consulted with him and took at least preliminary action concerning his "de facto" applications for license and Zoning Board of Appeals' permission, and (3) while these administrative processes were in fact occurring in direct relationship to plaintiff, plaintiff expended large sums of money

" . . . in developing . . . [a] Mobile Home Park Plan, including, but not limited to money expended for planning, preparation of plans, surveying and engineering."

The record reveals that the defendant governmental officials and agencies were in no respect at fault—as wrongfully having induced plaintiff to be such "de facto" applicant or encouraged him to continue the processing of his "de facto" applications in the course of which plaintiff spent large sums of money. Plaintiff had never disclosed to any of the defendants the details of his relationship to the Eastern Avenue tract. Specifically, plaintiff did not reveal that persons other than he (having the name "Walsh") were the record owners of legal title to the property. Instead, plaintiff misleadingly described the Eastern Avenue site as "the Walsh" property. Hence, it is not arguable that defendants had legal "notice" that plaintiff lacked requisite eligibility to be an "applicant" for license or Zoning Board of Appeals' permission.

That plaintiff's *legally unauthorized* applications were in fact allowed to continue in the administrative processes was thus solely and fully the responsibility of the plaintiff. For this reason, the substantial amounts of money expended by plaintiff in connection with the "follow through" of his applications must be looked upon as gratuitous action by the plaintiff; and if it turns out to be a loss to plaintiff, it is a loss attributable to plaintiff's own fault. As such, it cannot afford plaintiff a basis to suggest as arguable that although he lacked legally authorized eligibility as an "applicant", dictates of fairness (in terms of alleged estoppel, waiver or otherwise) should yield a substitute rationale by which plaintiff's "de facto" applications and the "de facto" processing of them may be held

sufficient to give plaintiff "standing to sue." [5]

## III

Since defendants are correct in their assertion that plaintiff is here without proper "standing",[6] we confront the question whether the failure of defendants to raise the "standing" deficiency earlier should induce this Court to refrain from recognizing and applying it at the appellate level.

■ It is an acknowledged principle, and one generally followed by this Court as necessary to a sound appellate practice, that an issue raised for the first time at the appellate stage will be denied cognizance in the appellate review of the case. Reville v. Reville, Me., 289 A.2d 695 (1972); Younie v. State, Me., 281 A.2d 446 (1971); Frost v. Lucey, Me., 231 A.2d 441 (1967).

Simultaneously, however, and as we have observed (ante at pp. 205, 206), we cannot ignore that "standing"—to borrow a characterization of Chief Justice Warren in a closely analogous context—has

" . . . an iceberg quality, containing beneath . . . [the] surface simplic-

ity submerged complexities . . . ." (See: Flast v. Cohen, 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968))

These "complexities", produced by the shifting content attributed to "standing", indicate the wisdom of the warning of Mr. Justice Douglas:

"[g]eneralizations about standing to sue are largely worthless as such." Data Processing Service v. Camp, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)

■ In the case at bar, therefore, whether plaintiff's lack of "standing", as a deficiency raised for the first time on appeal, shall be held effective against plaintiff's interests cannot be settled by the pronouncement of a general rule that "standing" is, or is not, the kind of issue which may be raised for the first time at the appellate level. The answer must depend on the special and distinctive features of *this* case.

■ On such an approach we stress initially that plaintiff's resort, here, to the "declaratory judgment" authority of the Superior Court, as conferred by Maine's

---

5. Our concern to explain that governmental officials had played no wrongful part in the "de facto" filing and processing of the applications, in connection with which plaintiff had expended large sums of money, is not to be taken as a suggestion that were such facts affirmatively established, plaintiff would have "standing" in the present case. On this point we intimate no opinion, and none should be inferred.

6. We have not overlooked that this conclusion has been reached on the premise that the provisions of the Brewer Mobile Home and Zoning ordinances, and of the amendments to them, are legally valid.

The result remains the same on the hypothesis that the attacks upon the legal validity of the ordinances and amendments thereto, as made in plaintiff's complaint, have merit.

If it be taken as open to plaintiff to contest the validity of the entirety of the Mobile Home Park ordinance and its revision in the

same proceeding in which he has sought benefits under the ordinance, but see Snelson v. Culton et al., 141 Me. 242, 248, 42 A.2d 505 (1945), and even if all of plaintiff's claims of ordinance invalidity are sustained, there would remain legally intact, and operative, the requirement of the Zoning ordinance—insofar as the Eastern Avenue tract would, in any event, lie in the "single residence and farming" zone—that a mobile home park is a permitted use only upon " . . . the favorable recommendation of the Planning Board and after final approval of the [Zoning] Board of Appeals." Hence, without need that a decision be made as to plaintiff's assertions of unconstitutionality, or other illegality, plaintiff would continue to lack "standing to sue" in the instant proceedings—in which plaintiff claims legal entitlement to final approval by the Zoning Board of Appeals—because plaintiff is not recognized under the Brewer Zoning ordinance as an eligible "applicant", in the first instance, for such approval.

"Declaratory Judgments Act", 14 M.R.S.A. § 5951 et seq., does not establish a *subject-matter jurisdiction* by which the Superior Court achieves power to act.

> "The purpose of [the Declaratory Judgments Act] . . . is not to enlarge the jurisdiction of the courts to which it is applicable but to provide a more adequate and flexible remedy in cases where jurisdiction already exists." Maine Broadcasting Company, Inc. v. Eastern Trust & Banking Company et al., 142 Me. 220, 223, 49 A.2d 224, 225 (1946);

Sears, Roebuck and Company v. City of Portland et al., 144 Me. 250, 68 A.2d 12 (1949); Clapperton v. United States Fidelity & Guaranty Company, 148 Me. 257, 262, 263, 92 A.2d 336 (1952); Cf. Lund ex rel. Wilbur v. Pratt, Me., 308 A.2d 554 (1973).

Notwithstanding, therefore, that plaintiff has called his complaint a "Complaint for Declaratory Judgment", the subject-matter jurisdiction of the Superior Court derives not from the label but from the substantive gravamen of the complaint.

Essentially, the complaint invokes the traditional *equity* subject-matter jurisdiction of the Superior Court. It attacks administrative action, and non-action, as well as the activity of the legislative body of the City of Brewer in amending the City ordinances, on the basis that such governmental conduct had impaired *property rights* of the plaintiff irreparably, insofar as the "law" jurisdiction of the Superior Court fails to provide an adequate remedy by which plaintiff may achieve the ulti-

mate issuance of the license, permit or certificate to which he claims legal entitlement.[7]

It would appear that the presiding Justice likewise conceived that it was the Court's *equity* subject-matter jurisdiction which plaintiff had brought into play since the presiding Justice saw fit to give plaintiff a remedy which was in practical effect the equivalent of a comprehensive mandatory injunction. (see ante, pp. 204, 205)

Unless, however, it is alleged, and made to appear, that plaintiff has a relationship to the land qualifying him as a proper "applicant" under the regulatory ordinances— on the basis of which it becomes at least arguable that plaintiff (upon appropriate findings that he has fulfilled all other regulatory requirements) has legal entitlement to a license and permit which could constitute the *"property"* rights cognizable in a Court of equity,—there is absent a necessary condition of *equity* subject-matter jurisdiction.

■■■ In short, here, precisely the deficiency constituting plaintiff's lack of "standing to sue" concomitantly gives rise to a lack of subject-matter jurisdiction in the Court. Although in our analysis we have chosen to posture plaintiff's lack of appropriate relationship to the Eastern Avenue site in a primary mold of "lack of standing", and even were we inclined to reject "standing" as a matter properly cognizable when questioned for the first time at the appellate level, in any event, the Court's lack of subject-matter jurisdiction persists; and lack of subject-matter juris-

---

**7.** It seems most unrealistic to interpret plaintiff's complaint, or the approach taken to it by the presiding Justice, to involve the subject-matter jurisdiction of the Superior Court as "sounding" in traditional "mandamus." Here, the administrative processes by which licenses, permits or certificates for mobile homes are issued are discretionary (as distinguished from "ministerial") functions. Similarly, the activities of the Brewer City Council in enacting amendments to its ordinances are "legislative" and, therefore, surely other than "ministerial." In view of the established

principles which deny a "law" (as in "mandamus") subject-matter jurisdiction to the Superior Court to intervene to control the manner in which an administrative or legislative "discretion" shall be exercised, or the particular decision which shall be forthcoming from it, (absent a special factor of manifest injustice) Chequinn Corporation v. Mullen et al., 159 Me. 375, 193 A.2d 432 (1963), it would seem unreasonable to believe that plaintiff had intended to confront such obstacle which he does not face by invoking the Superior Court's *equity* jurisdiction.

diction is always open at any stage of the proceedings. Cushman Co. et al. v. Mackesy et al., 135 Me. 490, 200 A. 505 (1938); Stinson v. Taylor, 137 Me. 332, 17 A.2d 760 (1941); and Green v. State, Me., 245 A.2d 147 (1968). See: Frost v. Lucey, Me., 231 A.2d 441, 446 (1967).

Because of this unique feature—that the inadequacy of the plaintiff's relationship to the Eastern Avenue site causes not only the lack of "standing" in plaintiff but also deprives the Court of the *equity* subject-matter jurisdiction on the basis of which plaintiff has sought the Superior Court's intervention and that Court has seen fit to act—we shall here take cognizance of the deficiency at the appellate level within an analytical cloak of "standing" (which we deem to be conceptually antecedent to the consideration of whether a Court has a jurisdiction of the subject-matter) notwithstanding that defendants had failed to assert it (as a "standing" issue or otherwise) prior to the appellate level.

 Simultaneously, however, we believe that in the circumstances the interests of justice require that plaintiff be not entirely foreclosed but be given opportunity in the Superior Court to present such additional evidence (as might be available) concerning the concrete details of the "authority" conferred upon him by the record legal title holders of the Eastern Avenue property. Surely, counsel stipulated such "authority" on the basis of some underlying facts known to the parties and counsel but, unfortunately, not disclosed to us on the record. Moreover, at the oral argument representations were made that if it became critical, plaintiff might be able to establish that he had an interest in the Eastern Avenue site as a "resulting trust" beneficiary; and such interest could be adequate to give him "standing."

The case will, therefore, be returned to the Superior Court for the presentation of additional evidence bearing upon whether plaintiff has a "title, right or interest" in the Eastern Avenue site sufficient, in ac-

cordance with this opinion, to provide plaintiff with "standing to sue." After such evidence (if any) has been introduced, the presiding Justice may, in light of the evidence presented or otherwise, take such action, or conduct such further proceedings, not inconsistent with this opinion, as he thinks necessary or appropriate.

The entry is:

Appeal sustained. Case remanded to the Superior Court for the presentation of additional evidence in accordance with the opinion herein; and for such other and further proceedings, not inconsistent with this opinion, as the presiding Justice may find necessary or appropriate.

WEBBER, J., sat at argument but retired before the decision was rendered.

All Justices concurring.