244 A.2d 265.

ECRO CORPORATION *et al. vs.* JOHN W. SANFORD *et al., Members of the Town Council, Town of Tiverton.*

JULY 18, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kellcher, JJ.

PAOLINO, J. This is a petition for certiorari to review the action of the town council of the town of Tiverton denying an application for a gasoline storage license which had been sought under the terms of the Tiverton ordinance regulating the storage of petroleum products. The writ was issued and pursuant thereto, and to an order entered in this court granting petitioners' motion to supplement the record, the pertinent records have been certified to this court.

The petition, which is under oath, contains the following pertinent statements.[1] The petitioner, William Wolfson, is the owner of the land involved in this proceeding. It is located on Main Road between Reed and Randolph Avenues in the town of Tiverton, in a district zoned C-2 (Heavy

---

[1]The respondents filed no answer to the petition but, in their brief, expressly adopt petitioners' statement of the facts which are in substance a repetition of the allegations in their petition for certiorari.

Commercial), by the local zoning ordinance. The petition-
er, Ecro Corporation,[2] has agreed to purchase said land for
the purpose of constructing thereon a gasoline filling sta-
tion,[3] and petitioner, Atlantic Richfield Company, intends
to operate the station under a lease with Ecro.

On July 11, 1966, the town council granted to the then
owners of the land in question a gasoline storage license
under sec. 11-10 through sec. 11-16 of the ordinance re-
lating to storage of petroleum products. The license al-
lowed the storage of 16,000 gallons of petroleum products
for the term of one year unless sooner revoked and was
granted subject to the granting of a building permit. The
storage license has not been revoked. On April 15, 1967,
the building inspector issued a building permit for a service
station to Sibarco Stations, Inc.[4] Ecro agreed to purchase
the land from Wolfson provided it could be used to con-
struct and operate a gasoline filling station thereon. On
April 26, 1967, Ecro obtained a transfer to it of the storage
license which had been granted to the previous owners of
the land.

Sometime after Ecro agreed to purchase the land from
Wolfson, it was learned that the storage license issued to
the prior owners on July 11, 1966 was defective because
the town council failed to give notice by publication as
required by sec. 11-12 of the storage ordinance. There-
upon petitioners, Ecro and Atlantic Richfield, filed a new
application, dated May 15, 1967, for the issuance of a li-
cense to store on the premises for commercial purposes
petroleum products with a capacity of 16,000 gallons. This
application was filed under the provisions of the ordinance
regualting the storage of petroleum products and notice was

---

[2] A subsidiary of Atlantic Richfield Company.

[3] The alleged agreement is not in evidence as an exhibit.

[4] Another subsidiary of Atlantic Richfield Company.

given by publication of a public hearing to be held on June 5, 1967.

At that hearing, several objectors appeared and opposed the issuance of the license on the grounds that another gasoline station on Main Road was not warranted; that it would result in excessive competition; and that it would constitute a traffic hazard. The petitioners, Ecro and Atlantic Richfield, presented evidence that they had and would comply with all of the applicable requirements of the storage ordinance. They also informed the town council that in reliance upon the existence of the "license" issued on July 11, 1966, Ecro entered into a purchase and sales agreement to buy this property.

At the conclusion of the hearing on June 5, 1967, the town council took the matter under advisement. Then, at a special meeting held on July 12, 1967, upon advice of the town solicitor, they denied the application on the grounds that

> "* * * there is no provision in the Zoning Ordinance for gasoline filling stations, and also due to the fact that the storage of petroleum and petroleum products is allowed by Special Exception only in an M-2 zone."

The petitioners contend that the action of the town council is illegal and in excess of its jurisdiction as a licensing body. They base their claim that they are entitled to a storage licnese as a matter of right on their alleged compliance with the requirements of the Tiverton storage ordinance and the fact that there is no restriction imposed by the Tiverton zoning ordinance on the storage of up to 16,-000 gallons of gasoline in connection with the operation of a retail gasoline service station. The respondents, in addition to opposing these contentions, allege that the town council lacked authority to grant such a license since petitioners lacked standing to apply for it.

We first consider the question of standing. The respondents base their contention on the fact that the owner of

the land in question did not join in petitioners' application for the storage license thereby causing petitioners to lack the requisite standing to apply for such a license.

It is undisputed that neither Ecro nor Atlantic had legal title to the land. The respondents contend that neither of them had any interest, separate and apart from ownership, which might possibly confer standing to seek a gasoline storage license under the storage ordinance. They maintain that since the details of the alleged agreement are unknown and since there is no evidence that the agreement, if it exists, is a binding purchase agreement, Ecro and Atlantic have failed to establish any interest in the land giving them standing to apply for the gasoline storage license.

In arguing that neither Ecro nor Atlantic had standing to apply for such permit, respondents rely heavily on our recent decision in *Packham* v. *Zoning Board of Review,* 103 R. I. 467, 238 A.2d 387. In that case the Sun Oil Company applied to the zoning board of the city of Cranston for a special exception for permission to erect a gasoline service station on two contiguous parcels of land, only one of which was owned by it. The owner of the other lot did not join in the application. Sun Oil Company claimed standing on the basis of an agreement to purchase the other lot from the owner, contingent upon the granting of the exception. Because the record failed to disclose the precise nature of the agreement between Sun Oil and the owner of the other lot and because we found nothing in the record to support the respondent's argument in that case that "the agreement was to be binding upon" the grant of the relief sought, we quashed the record without prejudice to the right of the applicant to again apply for an exception in order to establish the character of the agreement. In holding that "* * * the legislature contemplated that standing to obtain an exception would be conferred

upon those who have some right, title, or interest in the land," we expressly pointed out at page 389 that our holding there was based upon the signifiance which we attached "* * * to the purpose for which exceptions are established."

The application in the case at bar is one requesting the town council to issue a license to store petroleum products for commercial purposes. It was brought under secs. 11-10 to 11-16 of the local petroleum storage ordinance, which was enacted by virtue of authority granted to the town council by G. L. 1956, title 23, chap. 36. The enabling act contains no express provision conferring standing on any particular person to apply for the licenses therein provided; nor does the act or the ordinance expressly, or otherwise, prescribe what interest an applicant must have. Unlike the zoning ordinance, however, the storage ordinance does not regulate the comprehensive use of land, as such. Rather, it regulates the location, construction, reconstruction, erection, alteration, or changing, within the town of

> "* * * any tank or container for the storage of petroleum, kerosene, gasoline, coal, oil, fuel oil and their products, compounds or components, except for use in the household on the premises, unless an application for a permit shall be first made and a permit to do so shall be obtained from the town council as provided by this article."

See sec. 11-10 of the storage ordinance.

Notwithstanding the fact that the act and ordinance are silent on the subject, we are of the opinion that the principle set forth in *Packham, supra,* is applicable here. We conclude that the legislature intended that some right, title or interest in the land upon which one seeks to store gasoline or petroleum products is a prerequisite to the obtaining of a license to do so. The question now before us, therefore, is whether either of the petitioners had such right or interest.

The petitioners, Ecro and Atlantic, notwithstanding re-

spondents' assertions to the contrary, have shown without contradiction that Ecro has an agreement to purchase the land in question if the license is granted, and therefore had sufficient interest in the land to give petitioners standing to apply for the storage license, even though the owner of the land did not join therein.

As we have stated previously, the respondents, for the purposes of this appeal, acknowledge as true the petitioners' statement of facts which state explicitly that a binding agreement was in existence at the time of the application wherein the petitioner Ecro promised to purchase the land in question providing a storage license were obtained. For this reason petitioners had an interest in the land apart from ownership which gave them the requisite standing to apply for a storage license under *Packham, supra.*

We next consider petitioners' contention that they are entitled to a gasoline storage license as a matter of right because they complied with the requirements of the Tiverton storage ordinance and because there are no restrictions imposed by the Tiverton zoning ordinance on the storage of up to 16,000 gallons of gasoline in connection with the operation of a retail gasoline service station. The petitioners rely on *Rhode Island Refining Corp.* v. *Town Council,* 92 R. I. 88, 91-2, 166 A.2d 707, 709, where we said:

> "In the absence of zoning restrictions proof of compliance with the requirements of the ordinance entitles an applicant to a permit as a matter of right."

The town council, in passing upon petitioners' application, did not pass upon the question of compliance with the storage ordinance but, instead, decided that there were restrictions imposed by the Tiverton zoning ordinance which prevented their issuing such license.

For reasons soon to become apparent we shall postpone our discussion, as to whether petitioners complied with the storage ordinance until we have resolved the question of whether there are restrictions in the Tiverton zoning

ordinance which would bar the issuance of such license. Upon examining the pertinent provisions of the Tiverton zoning ordinance, we hold that the town council erred in finding such restrictions in the ordinance and consequently committed reversible error in denying petitioners' application for a gasoline storage license.

The petitioners contend that a gasoline filling station is a permitted use in a C-2 zone under art. II, sec. 8, of the zoning ordinance and that storage of petroleum in quantities up to 16,000 gallons is permitted as an "accessory and incidental" use under art. II, sec. 13.

Section 8, which is entitled "Commercial Uses—General," provides that "Any structure or use for the sale of food or goods at retail or for the sale or provision of services" is a permitted use in a C-2 zone. Section 9, entitled "Wholesale Commercial and Storage Uses," states that only a structure or use for the sale of food or products at wholesale is permitted in a C-2 zone. Temporary storage of building materials and equipment in connection with adjacent construction is an accessory use while the storage of coal, coke, lumber or wood yard may be obtained through a special exception. All other uses and structures, including the storage of petroleum and petroleum products, are not permitted in a C-2 zone. Section 13 is entitled "Accessory Uses" and states that "Any structure or use clearly accessory and incidental to a permitted use or to a lawfully existing non-conforming use" is a permitted use in a C-2 zone.

Since a gasoline filling station is engaged in the business of selling goods at retail, it must be a contemplated use and structure within the meaning of sec. 8 of the ordinance. The next question before us, therefore, is whether the storage of petroleum and petroleum products is an "accessory and incidental" use to the operation of said filling station under sec. 13 of the ordinance. The respondent argues in

accordance with the council's decision that sec. 9 contemplates that the storage of petroleum and petroleum products can only be achieved through a special exception and, even then, only in an M-2 zone. The petitioners on the other hand, argue that the respondent is misinterpreting the ordinance. They contend that either of the following two constructions of the ordinance should be adopted by this court.

The petitioners first argue that the word "Wholesale" modifies both "Commercial" and "Storage" uses, thereby making sec. 9 applicable only to the wholesale storage of petroleum and petroleum products. A careful reading of this section, however, indicates that such a construction is not reasonable. One part of sec. 9 specifically mentions the word "wholesale" while the others do not. This indicates that sec. 9 is dealing with both wholesale commercial uses and non-wholesale storage uses. What is more, it is difficult for us to conceive a *wholesale* temporary storage of building materials and equipment in connection with adjacent construction.

The petitioners next argue that sec. 9 refers only to those individuals who wish to store petroleum and petroleum products absent the presence of a gasoline filling station. It is our opinion that this construction of sec. 9 is the correct one. Accordingly we hold that the storage of petroleum and petroleum products is clearly accessory and incidental to the operation of a gasoline filling station, a permitted use in a C-2 zone.[5] As indicated by sec. 13, an accessory use is a permitted use in a C-2 zone.

Since the burden was on the petitioners to show, in the absence of zoning restrictions, that they had complied with the storage ordinance and since the council made no finding

---

[5]Unless such use is a nonconforming use, sec. 13 does not require it to be in existence at the time the application is made. The use need only be one that would be permitted under the ordinance.

with respect to this question, we remand this case to the town council in order that they may do so, with such finding to be made in light of our conclusion with respect to the requirements of the zoning ordinance.

The petitioiners' appeal is sustained, and the decision of the town council is quashed. The record as thus quashed is remanded to the town council for further proceedings in accordance with this opinion.

*Letts & Quinn, Andrew P. Quinn, Richard F. Canning, & Jerome B. Spunt,* for petitioners.

*Sheffield & Harvey, Ray H. Durfee* and *Brian G. Bardorf,* Town Solicitors, for respondents.