The appellants brought these two zoning appeals, now consolidated, appealing the Zoning Board's grant of a dimensional variance and special use permits to the applicants so that the applicants may construct a gas station. First, the appellants appeal the initial grant of a dimensional variance and special use permit for an eight-pump gas station. Second, the appellants contest the Zoning Board's power to consider the applicants' second request for a special use permit for the same property that was submitted while the first appeal was pending. Finally, the appellants appeal the Zoning Board's grant of the applicants' second special use permit request. After reviewing the record and considering the arguments, the Court dismisses both of the appellants' appeals and affirms the Zoning Board's grant of a special use permit as to the applicants' second application.
 Facts and Travel
In May 2001, Amerada Hess Corporation, Rhonda and Vincent Stanzione, Thomas and Lynne Cardillo and Linda Filippone (collectively the "applicants") filed a petition for relief with the Zoning Board of Review of the Town of Johnston ("Zoning Board") regarding certain property known as Town of Johnston Assessor's Plat 27., Lots 162, 172, and 203 (the "Property"). The applicants requested a special use permit to utilize the Property as a gas station/convenience store and a dimensional variance to construct the eight-pump service station and canopy.
On October 25, 2001, the Zoning Board held a hearing on the application. The applicants presented two expert engineering witnesses, Steve Decoursey ("Decoursey") and Richard A. Bemardo, and a real estate expert, J. Clifton O'Reilly ("O'Reilly"), all of whom testified at the hearing. Some of the appellants testified themselves at the hearing and all were represented by counsel. The appellants also had their real estate expert, Paul Bordieri ("Bordieri"), testify at the hearing. On November 8, 2001, the Zoning Board granted both the special use permit and the dimensional variance. The appellants appealed that decision to this Court arguing that it was error for the Zoning Board to grant a dimensional variance in conjunction with a special use permit.
On May 28, 2002, the applicants filed another zoning application for the Property requesting a special use permit to use the Property as a gas station/convenience store. In this application, the number of pumps was reduced from eight to six, no signage relief was requested, and the canopy and pumps were located in a manner that satisfied local setback requirements; therefore, the applicants submitted that no dimensional variance was needed. The appellants sought a restraining order from this Court preventing the Zoning Board from considering the second application; this Court denied the restraining order request.
On June 27, 2002, the Zoning Board held a hearing on the second application. Decoursey and O'Reilly again testified on behalf of the applicants, similarly, Bordieri testified for the appellants. On October 18, 2002, the Zoning Board issued a written decision approving the special use permit. The appellants appealed that decision to this Court arguing (1) that the Zoning Board lacked jurisdiction to consider the second application, (2) that the Zoning Board's decision is clearly erroneous, and (3) that the applicants still need a dimensional variance, which, they argue, is not available in connection with a special use permit. The two appeals have been consolidated and are now before this Court.
 Jurisdiction and Standard of Review
This Court has jurisdiction over these appeals pursuant to G.L. (1956) § 45-24-69 (a). This Court's scope of review is narrow:
 (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This Court's review is circumscribed by and deferential to the administrative agency. Restivo v. Lynch, 707 A.2d 663, 667 (R.I. 1998). It cannot substitute its judgment for that of the zoning board, but must uphold a decision supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd. of Rev., 632 A.2d 643, 646 (R.I. 1993). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Board of Review, No. 2001-505-M.P., 2003 R.I. LEXIS 57, at *12 n. 5 (R.I. Supreme Ct. filed March 21, 2003) (quoting Caswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the Court must examine the record to determine whether competent evidence exists to support the Zoning Board's decision. New England Naturist Assoc., Inc. v. George, 648 A.2d 370, 371 (R.I. 1994).
 The Propriety and Effect of the Second Application
This Court will first address the issue of whether the second application was proper, and if so, how, if at all, it affected the first application and appeal. From what the Court gleans from the record, concerns that this Court would overturn the initial grant of a dimensional variance and specific use permit prompted the applicants to file the second application while the first appeal was pending. While the first application was pending appeal in this Court, the appellants assert both that the doctrine of administrative finality barred the applicant from filing the second application and that the Zoning Board lacked jurisdiction to consider the second application. This Court notes, however, that it was the appellants who appealed the Zoning Board's decision and not the applicants, and that thus, if the applicants wished to abandon their attempt to secure a dimensional variance and a special use permit at this stage, it was their right to do so.
The applicants have not affirmatively abandoned their initial request; however, for the sake of municipal and judicial efficiency, an applicant who has been granted initial zoning relief cannot hedge his bets by successively applying for and receiving alternative zoning relief for the same property, and still have the pending appeal of the initial grant considered by this Court. This Court therefore deems the applicants' second zoning relief application a withdrawal of their first application for zoning relief. The appellants' appeal of the Zoning Board's decision granting the requested relief is therefore moot.
The Johnston Zoning Ordinance states that if an applicant withdraws a special use permit or variance request, the Zoning Board is prohibited from considering a subsequent request for the same special use permit or variance for a period of two years. Johnston Zoning Ordinance Art. 5, § E (1). Therefore, the Zoning Board could only consider the applicants' second request for zoning relief if it was materially or substantially different than the first request. Johnston AmbulatorySurgical Assoc. LTD. v. Nolan, 755 A.2d 799, 811 (R.I. 2000) (stating that material and substantial changes can be internal to the zoning relief request application or concerned with external circumstances such as the use or nature of the property involved). The appellants assert that the second application was for substantially similar relief and it was, therefore, beyond the Zoning Board's jurisdiction to consider.
The fact is, however, that the applicants' second application seeks different relief than their first application. In their first application, the applicants requested both a special use permit and a dimensional variance. In the second application, the applicants scaled back the scope of the proposed project and the Zoning Board determined that the structures were to be built on the property in a manner that satisfied local setback requirements; thus, no dimensional variance was required and the requested relief substantially differed from the first request. Consequently, the second application was properly before the Zoning Board.
 The Grant of the Special Use Permit
After the public hearing held on June 27, 2002, the Zoning Board issued a decision on October 18, 2002 granting the requested special use permit. In its decision, the Zoning Board noted that the applicants did not request any setbacks or dimensional variances, merely the special use permit to construct the gasoline station. In their appeal to this Court, the appellants argue that although the applicants requested no setbacks or dimensional variances in their second application, a dimensional variance is required in order to construct the proposed project because one aspect of the project does not meet local setback requirements.
The Property is zoned General Business B-2, requiring a 40' side yard setback. In the applicants' proposed project, underground storage tanks will be located within the 40' setback. According to the Johnston Zoning Ordinance, the setback requirement applies only to the principal structure on the property. "Accessory" and "auxiliary" structures are exempt from the setback requirement. In the instant case, the Zoning Board determined that the underground tanks were "accessory" or "auxiliary" structures and that they were therefore not subject to the setback requirement. The appellants assert that the underground tanks that will be used by the applicants' proposed gas station constitute a "principal structure" as defined by the Johnston Zoning Ordinance and that, therefore, the underground tanks were subject to the local setback requirements, which would require the applicants to request and receive a dimensional variance in order to construct the tanks.
The Rhode Island Supreme Court has held that "the storage of petroleum and petroleum products is clearly accessory and incidental to the operation of a gasoline filling station." Ecro Corp. v. Sanford,104 R.I. 337, 345, 244 A.2d 265, 270 (1968). There can be no debate that in the absence of the service station, the applicants would not have sought to put underground petroleum tanks on the Property. In fact, as noted by the applicants, the storage of flammable material is prohibited as a principal use in B-2 zoning districts under the Johnston Zoning Ordinance. Since gasoline stations may be built in B-2 zones with a special use permit, it follows that the storage of the flammable petroleum is permitted as incidental to the operation of the gasoline station.
Furthermore, concerning yard dimensions and depths, the Johnston Zoning Ordinance defines a "yard" as "a space on the same lot with a principal building, open, unoccupied and unobstructed by buildings or structures from the ground to the sky. . . ." Johnston Zoning Ordinance Art. II, § 99. Here, the proposed tanks would be subterranean, therefore not considered part of the "yard" as defined by the Johnston Zoning Ordinance. The appellants' asseveration that the underground storage tanks comprised part of the principal structure of the proposed service station and are subject to the local setback requirements is unconvincing.
The appellants argue further that certain residents are concerned that the presence of the service station will adversely impact their property values and hence be inimical to public health, safety, morals and welfare. The Zoning Board explained that it had heard conflicting testimony regarding the matter from both the applicants and appellants through the testimony of O'Reilly and Bordieri, respectively, and that it found O'Reilly's testimony the more probative, reliable, and convincing. This Court "does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact," but rather it defers to the zoning board in such matters and searches the record to ascertain whether the zoning board's decision is based upon competent evidence. Munroe v.Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999). Here, O'Reilly testified to the fact that this area is zoned for general business and that this area contains, inter alia, a Wal-Mart, Citizens Bank, and a Mobil Oil station. Thus, this Court finds that the record contains competent evidence that the proposed project is not inimical to the public health.
The Johnston Zoning Ordinance requires that the "best practices and procedures to minimize the possibility of any adverse effects on the neighboring property . . . and the environment . . . will be employed." Johnston Zoning Ordinance Art.III, § P(2)(b), (d). The appellants next argue that the applicants failed to present a qualified environmental expert witness; therefore, the applicants failed to demonstrate that the best practices and procedures would be used to ensure minimal environmental impact. The record before this Court, however, clearly demonstrates that the applicants' witnesses, Decoursey and O'Reilly, supplied the Zoning Board with competent evidence that environmental issues were being given the requisite consideration.
Decoursey testified extensively as to the specifics of the underground tanks and their safety features. (Hearing of June 27, 2002, Transcript at 63-69), (hereinafter "Transcript"). Decoursey testified as to the safeguards that would be implemented to guard against oil spills. He also testified as to the project's water and utility demands and management. (Transcript at 57). O'Reilly stated that the existence of municipal, state, and federal regulations controlling the building, maintenance, and operation of gasoline stations ensures that the best practices and procedures will be employed to minimize environmental impact. Thus, there is competent evidence in the record to support the Zoning Board's decision that the applicants had adequately addressed the relevant environmental concerns.
 Conclusion
Since this Court deems the applicants' second application for zoning relief a withdrawal of the first application, the appellants' appeal of the Zoning Board's initial grant of a special use permit and a dimensional variance is now moot. The Court finds that since the relief requested by the applicants in their second application was substantially and materially different than that requested in the first application, the Zoning Board properly considered the application. The Court finds that the Zoning Board properly determined that the applicants' proposed underground tanks were not subject to the local setback requirements because they did not constitute part of the "principal structure."
After reviewing the entire record, the Court affirms the decision of the Zoning Board to grant the applicants' a special use permit. The Court finds that the Zoning Board's decision is supported by the reliable, probative, and substantial evidence of record. Furthermore, the Court also finds the Board's decision did not constitute an abuse of discretion, was not affected by error of law, is not arbitrary or capricious, and is not in violation of constitutional or statutory provisions. The Court dismisses both of the appellants' appeals and affirms the Zoning Board's grant of a special use variance to the applicants. Counsel is directed to confer and submit to this Court the appropriate order for entry after notice.