Roger F. Dunham *et al. vs.* Zoning Board of the Town of Westerly.

JUNE 5, 1942.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a petition for a writ of *certiorari* to review the action of the zoning board of the town of Westerly in granting, under a special exception to the zoning ordinance, a permit for the location and operation of a "public utility plant" on land which was in a residential district. The applicants for the permit before the zoning board were W. Russell Dower, owner of the land, and The Narragansett Electric Company, a public utility corporation of Rhode Island, which held an option to purchase this land. The petitioners here are certain taxpayers and owners of land variously situated in the town of Westerly, who objected before the respondent board to the granting of such exception. Pursuant to the writ the records of the zoning board have been certified to this court.

From these records the following facts appear: W. Russell Dower was the owner of approximately eight and one half acres of land situated on the Pawcatuck river about half way between the business district of Westerly and Watch Hill, a residential and summer recreation part of that town. This land was entirely within an area that had been designated, under the zoning ordinance, as a residence "B" district. The Narragansett Electric Company, hereafter called Narragansett, became interested in the land as a site for a proposed public utility plant, which was in fact a "central station, light or power plant", if a special exception to the

zoning ordinance could be obtained to permit the location and operation of such a plant in this residential district. Accordingly Narragansett paid to the owner $500 for an option which obligated the owner to deliver a deed to this land upon payment of $7500 but which did not obligate Narragansett to purchase it at that or any other price.

The owner and Narragansett on September 8, 1941 filed a written application with the respondent zoning board requesting that a special exception under the zoning ordinance be granted to permit the construction and operation of such a plant. The pertinent part of chap. 22, sec. 23 B, Westerly ordinances 1925, as amended by chap. 66, section 1, Westerly ordinances 1930, authorized the zoning board to: "2. Permit the location in any use district of a state or municipal building, college building, boat house, bath house, office building, *public utility plant,* ice house, aviation field . . . ." (italics ours)

The zoning board gave public notice of the application and held several hearings thereon at which the petitioners were given full opportunity to be heard personally and by counsel. At the hearings a great deal of oral evidence and many exhibits were introduced on behalf of the applicants and the objectors. The board visited, for purposes of information, one of Narragansett's central station plants in Providence and also viewed the land upon which the proposed plant was to be located and the neighboring properties of petitioners. Thereupon, after arguments by counsel representing the applicants and objectors respectively, the board rendered a written decision in which the application was granted subject to certain conditions therein set forth, which purported to protect the neighboring property against substantial injury from the location and operation of the proposed plant.

The petitioners here contend, in substance, that:

(1) Narragansett did not have the required legal interest in the land to warrant its application for a special exception under the ordinance.

(2) The respondent board, as a matter of law, had no authority under the enabling act and ordinance to entertain or grant the instant application for a special exception.

(3) Assuming the board had such authority, it was incumbent upon the applicants to affirmatively prove (a) that the granting of such exception was necessary in order that the spirit of the ordinance should be observed and substantial justice done (enabling act, sec. 9 (c); (b) that "owing to special conditions" refusal to grant the exception would result in unnecessary hardship to a person entitled to complain thereof (enabling act, sec. 9 (c); (c) that the public convenience and welfare would be substantially served (ordinance sec. 23 B); (d) that the appropriate use of neighboring property would not be substantially or permanently injured (ordinance sec. 23 B); and, as to these four requirements, there was either no evidence or the proof was overwhelmingly to the contrary.

(4) The conditions attached by the zoning board to the granting of the permit would not be effective to prevent substantial and permanent injury to the neighboring land of the petitioners.

Conceding that Narragansett had no mutually binding contract for the sale and purchase of the land, and therefore had no such legal interest therein as would support an application, in its own right, for special exception under the zoning ordinance, nevertheless that would not be decisive upon the board's authority in the instant case. The application in question was also made, signed and prosecuted personally before the board by the owner of the land whose right under the ordinance to apply for such an exception is not questioned.

Petitioners secondly contend that the zoning board was, as a matter of law, wholly without jurisdiction to entertain or grant this special exception because it was forbidden by the terms of the Westerly enabling act, public laws 1922, chap. 2299, as amended by P. L. 1925, chap. 746. This is not the general zoning statute found in G. L. 1938, chap. 342,

but in a special enabling act for zoning in the town of Westerly.

Petitioners argue that the town council of Westerly was authorized by section 1 of that act to adopt a zoning ordinance but that such ordinance must be made "in accord with a comprehensive development plan" and must conform, among other things, "to the *existing* character of each section of the town and its peculiar suitability for particular uses, and *with a view to conserving the value of buildings*"; and that such regulations must be designed, among other things, "to protect residence sections from traffic, *noise, smoke, fumes* and *other unwholesome conditions* and influences; . . . to *promote* a *wholesome* and *agreeable home environment;* . . . to promote . . . the conservation of exceptional natural physical features, *trees, waters, stream courses* and other natural resources." (italics theirs) From these requirements and the nature of the use applied for, they conclude that the board, as a matter of law, had no jurisdiction.

This argument, however, overlooks the fact that the same enabling act, P. L. 1925, chap. 746, sec. 9, authorized the town council to appoint a zoning board to have, among others, the following powers: "(c) To authorize upon application in specific cases such variance from the terms of any such ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of such ordinance will result in unnecessary hardship, and so that the spirit of such ordinance shall be observed and substantial justice done. (d) To authorize on application in specific cases under general rules laid down in such ordinances special exceptions to the terms of any such ordinance; and to pass upon applications for the approval of proposed sub-divisions of land into building lots and such other matters as are referred to it or upon which it is required to pass under such ordinances."

Since the legality of this enabling act has not been questioned, we are constrained to give effect to its express provisions. Therefore, we do not agree that, as a matter of law,

the town council was precluded by the terms of the Westerly enabling act from authorizing the zoning board to grant a special exception as provided in the ordinance.

The petitioners next contend that by the terms of the zoning ordinance the board was prohibited from permitting a central station, light or power plant in this residential district. The general ordinance of 1925, sec. 5 A 13, permitted a central station, light or power plant, as a matter of right, in an industrial district. The amendment in 1927 to this zoning ordinance removed a "central station, light or power plant" from the uses permitted as a matter of right in an industrial district and transferred it, together with fifteen other industrial uses, to "B. Special Permit Uses" within an industrial district. These required a special permit as provided in sec. 23 B 1.

They argue that this confirms the clear intent to restrict the erection and operation of a central station, light or power plant exclusively to the industrial use district. This argument would be persuasive if both the original and the amended ordinance had not included the following provision: "Section 23. Zoning Board. A. Organization. . . . B. Special Exceptions. When in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the zoning board may, in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established as follows: 1. Permit the location of a special permit use as listed in subdivision B of section 5 in any part of an industrial district; 2. Permit the location in any use district of a state or municipal building, college building, boat house, bath house, office building, *public utility plant*, ice house, aviation field, amusement park, fair grounds, circus grounds, crematory, cemetery, penal or correctional institution, sanitarium for the insane or feeble-minded, hospital for contagious or infectious diseases, sewage disposal or treatment plant, garbage disposal

plant, refuse dump, stone quarry, stone cutting plant, gravel or sand pit . . . ." (italics ours)

It is under this last provision that the application for a special exception was made by the applicants and was granted by the board. The petitioners concede that the ordinary meaning of the general term, public utility plant, included the special term, central station, light or power plant; but they contend that, according to certain rules of statutory construction, the designation of the particular plant in the industrial district requires that it be excluded from the meaning to be given a public utility plant as used later under sec. 23 B. In support of this contention they cite certain cases and rules of statutory construction whereby all portions of an act or ordinance are to be given effect, so far as possible, and where general and special terms appear in the same connection, the general term is to be construed as excluding the special term.

As we view it, the petitioners' contention would cut down, by mere implication, the plain, comprehensive and express powers that were given to the board by the enabling act and ordinance. Unless such an implication is necessary, we are of the opinion that the express provisions in the ordinance, if otherwise legal, should be given effect. In our opinion, the implication contended for by the petitioners is not a necessary one.

On the contrary, both provisions can stand and be given reasonable effect because they are not really inconsistent. There may be some redundancy or overlapping as to the grant of authority in sec. 23 B when applied to the industrial district uses which were covered in sec. 5 A; but not as to the authority to grant special permits as therein enumerated in districts other than industrial. Nor do we find that the general and special terms are used in the same connection. They appear to have been used at different places in the ordinance having different immediate purposes in view. Hence the cases cited and the rules of construction relied on by petitioners are not applicable here. While the petitioners'

argument may have force from a practical standpoint, nevertheless we are dealing here with a question of jurisdiction as a matter of law. On that basis and in view of the express, comprehensive language of sec. 23 B, we cannot say that the board was forbidden by the terms of the ordinance to entertain the application for this special exception.

The petitioners next contend that, assuming that the board had such jurisdiction, there was either no evidence to support the decision or the evidence failed to prove particularly the four conditions which petitioners urge were necessary. Two of these conditions, previously referred to, namely, that the applicants must show that it was a special case of unusual hardship and that the application was not contrary to the spirit of the act and ordinance, are answerable by the express provisions of the Westerly enabling act. As previously quoted, this act specifically authorized the zoning board to make such exceptions in certain special cases therein set forth. While sec. 9 (c) of the act expressly required a showing of unusual hardship in the case of an application for a variance, it significantly omitted such a requirement in the very next clause, sec. 9 (d), when authorizing the board to make special exceptions in special cases therein enumerated.

The case of *Heffernan* v. *Zoning Board of Review,* 50 R. I. 26, relied upon by the petitioners, involved a request for a variance and also was brought under a different zoning ordinance which did not have the same specific provisions concerning a variance and a special exception that are controlling in the Westerly enabling act. Therefore the *Heffernan* case and cases following that citation are not controlling in the specific circumstances presented here. The other two conditions asserted by petitioners are supported by argument that is based on the alleged failure of the applicants to discharge the burden of proof more than upon an alleged total lack of legal evidence. In this state, however, we have followed consistently the rule that on *certiorari* the decision of a zoning board will not be disturbed unless it is unsupported

by legal evidence and is arbitrary. In the instant case we have examined the evidence, not for the purpose of ourselves weighing it, but to see if there was legal evidence to support the decision. There was some, though not much, legal evidence to establish that such a plant would substantially serve the public convenience and general welfare; and there was conflicting evidence upon the question whether the proposed plant would substantially injure, in value and otherwise, the neighboring properties of the petitioners.

The board considered all of the evidence, viewed the proposed location and the properties of the petitioners, as well as a similar central station, light or power plant, before rendering its decision. It then granted the application, subject however to the fulfillment of certain conditions which, in the judgment of the board, were desirable to protect the neighboring property against substantial injury. In these circumstances, we cannot say that the decision was unsupported by any legal evidence and that it was wholly arbitrary and unreasonable.

The petitioners finally contend that the conditions imposed by the board would not in fact prevent substantial and permanent injury to the petitioners' neighboring properties. The answer to this contention, so far as this proceeding is concerned, is that the board, after hearings and after visits to the properties, have decided otherwise, and until a plant is constructed and operated it would be almost impossible for us, as a matter of law, to decide to the contrary. If we understand the argument correctly, petitioners ask that we conclude that the prospective operation of this plant would clearly amount to a private nuisance. If this be so, they will not be deprived of a suitable remedy merely because a permit under the zoning ordinance has been granted, since such a permit would not grant any right to operate a private nuisance.

Upon a consideration of all the provisions of the special Westerly enabling act and ordinance, and upon the conflicting evidence, and considering the conditions attached to the

permit, we cannot say that the respondent board was wholly without jurisdiction, in the first instance, or that the exercise of that jurisdiction was unsupported by any legal evidence and was wholly unreasonable and arbitrary.

The petition for the writ of *certiorari* is denied and dismissed. The decision of the respondent board is affirmed, and the papers in the case are ordered sent back to the respondent board.

*Tillinghast, Collins & Tanner, Harold E. Staples, Horace L. Weller,* for petitioners.

*Ira Lloyd Letts, John J. Dunn, Andrew P. Quinn, Alan P. Cusick,* for W. R. Dower and The Narragansett Electric Co.

*M. Walter Flynn,* Counsel to Zoning Board, and *John Ferguson,* Town Solicitor, for respondents.