ROLLIN BUCKMINSTER *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET.

ELIZABETH L. CUSHMAN *et al. vs.* SAME.

JULY 23, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. These are two petitions for writs of *certiorari* to review a decision of the Pawtucket zoning board

of review granting the application of Charles B. Lennon to locate and operate a "funeral home" at 209 Central avenue in that city. The writs were issued and the papers of the board in the matter were duly certified to this court. Since both petitions raise identical questions, we will hereinafter treat them as if only one petition were before us for consideration.

The case was argued in this court on December 2, 1942 and, on January 28, 1943, we remanded the papers to the board for the purpose of clarifying and completing its decision in accordance with our opinion of that date. *Buckminster* v. *Zoning Board of Review of the City of Pawtucket,* 68 R. I. 515. In compliance with such direction the board amended its decision and, on March 11, 1943, the papers were returned to this court. On April 30, 1943, the parties were allowed to present such further argument in support of their respective contentions as they deemed necessary under the amended decision.

Unless otherwise indicated, all boundaries, distances, directions and locations hereinafter mentioned have been determined by us from a plat in evidence before the board. We therefore speak in approximate terms as to such matters.

The property in question is located at the southwest corner of Central avenue and Orchard street. It has a frontage of 125 feet on the southerly side of the former street and of 60 feet on the westerly side of the latter. Central avenue is a main highway running easterly from Pawtucket to Seekonk, Massachusetts. Orchard street is a side street, about 425 feet long, which enters, but does not cross, Central avenue from the south. The house on the premises just mentioned has ten rooms. Attached to the house and connecting therewith is a three-car garage, which is entered from Central avenue. Lennon and his wife alone live in this house, they having no children. He applied for an exception to the zoning ordinance so that he might carry on his business of an undertaker from his residence. The petitioners here own property or reside in that neighborhood.

Lennon's property is in a district classified under the zoning ordinance as a residence B district. Therein, besides the uses permitted in a dwelling house district, the following are the permitted uses: Apartment house, boarding house or hotel, with certain restrictions; a gasoline filling station, stable, or an aeroplane landing field, airship hangar and accessory buildings and structures, if approved by the board of review.

The plat in evidence shows the westerly boundary line of an area zoned for business to the east of the southwest corner of Central avenue and Orchard street, where Lennon's property is located. The distance from this corner to that boundary line, as one proceeds easterly along the southerly side of Central avenue, is 350 feet. In between these two points are three dwellings, an apartment house, a church and a store. Next to the store is a gasoline filling station, which is in the area zoned for business. The distance from a point on the northerly side of Central avenue opposite the above-described corner to the above-mentioned boundary line on that side of the highway is 410 feet. Nine dwellings for one or more families are located between these two points. Immediately to the east of said boundary line there is a vacant lot 50 feet wide, and adjoining thereto there is a "Contractor's Yard", with garage, carpenter shop and office building. The remainder of the neighborhood in the immediate vicinity of Lennon's property consists of dwelling houses of the character hereinbefore described.

Acting under the authority of our zoning statute, now general laws 1938, chapter 342, the city of Pawtucket adopted in 1928 the zoning ordinance involved in this case. Section 16 of the ordinance establishes a board of review, with power, after notice and hearing, to determine and vary, in a specific case and subject to appropriate conditions and safeguards, the application of the regulations established by the ordinance, in harmony with the general purpose thereof, which, as stated in section 1 thereof, is to promote the public health, safety, morals and general welfare. Para-

graph 8 under section 16 gives the board power to "Approve in any district an application for any use or building deemed by the said Board to be in harmony with the character of the neighborhood and appropriate to the uses or buildings permitted in such district."

Lennon and one Edward F. Butler, who was in the real estate business, testified at the hearing before the board in support of the former's application for an exception under the ordinance, while five persons, one of whom was the petitioner Buckminster, testified against the granting of such application. Petitions signed by persons living in the general neighborhood of Lennon's premises were presented to the board in favor of and in opposition to the application. Both parties were represented by counsel.

Lennon testified that his house was too large to be used merely as a residence for himself and wife, and that he would continue to reside there if he were permitted to conduct his business as an undertaker from that place. He then described his property and the manner in which he would conduct his business, pointing out that the main entrance to the house was on Central avenue and that there were other funeral homes a comparatively short distance further west on that highway. Butler testified that he sold the house to Lennon; that he had lived in that neighborhood since 1930; that Central avenue, Orchard street and other nearby streets had "seen the best days as far as residences are concerned"; and that, in his opinion, a funeral home on Lennon's premises would not affect the market value of property in that neighborhood.

The testimony of the five persons who opposed the application was, in substance, that a funeral home near where they lived would disturb their peace of mind, thereby tending to injure their health; that it would increase the danger from traffic, especially as to children who lived on Orchard street; and that it would depreciate the value of property in the neighborhood.

In its amended decision the board, after stating that it examined Lennon's premises and viewed the neighborhood, finds that the effect of a funeral home at that place on the occupants of neighboring property would be diminished if Lennon confined the entrance to and the signs of the funeral home to Central avenue; that such a home would not seriously affect the general health, morals or public welfare of the neighborhood; and that it would not depreciate the value of other property therein to any greater extent than a gasoline filling station or a stable, which are permitted uses under the ordinance in that zone. Upon these findings the board granted the application with the restrictions as to entrance and signs above mentioned.

The petitioners do not question in any way the validity of the ordinance or the board's right to pass on the application as an exception under the provisions of section 16, paragraph 8 thereof. They contend that the decision of the board is erroneous in that it is based on considerations personal to Lennon and in disregard of the general welfare. We do not agree with this contention, for we cannot assume, as the petitioners apparently do, that the board gave little, if any, consideration to the public interests in granting the exception. The petitioners completely disregard the fact that the board, after taking evidence and hearing argument of able counsel, examined Lennon's premises and viewed the surrounding neighborhood, the easterly boundary of which unquestionably adjoins an area zoned for business. The reasons given by the board for its decision, when read as a whole and in connection with the evidence, fairly show that, in its opinion, the granting of the exception was not unduly in conflict with the public interest as expressed in the ordinance.

The petitioners further contend that the board erred in granting Lennon's application as there is no competent evidence in the record which shows that the exception was necessary to promote the public health, safety, morals or general welfare. In other words, they argue that, according

to the statute and the ordinance enacted thereunder, the board was without power to grant Lennon's application unless the evidence affirmatively established that the exception was in furtherance of the public interests. This is too restricted a view of the board's power under the statute and the ordinance.

General laws 1938, chap. 342 permits any city or town in this state to enact a zoning ordinance; but, according to section 6 thereof, neither the statute nor any ordinance enacted thereunder shall create or be considered to create any vested rights in any person, or to be or create any incumbrance upon the title of any person affected by any such ordinance. The main purpose of the zoning statute apparently is to authorize a municipality to enact, in the public interest and within the scope of the statute, a zoning ordinance restricting the use of real property as the particular needs of any given municipality may reasonably require. If the restrictions imposed by the ordinance are reasonable, an owner of land who is affected thereby in common with all others cannot complain. But, in the application of such a law, there may arise in individual cases need for an exception therefrom. The legislature therefore required, in section 8 of the statute, that every zoning ordinance shall provide for a board of review which may make special exceptions to the terms of the ordinance in harmony with its general purpose and intent.

This mandatory requirement of the statute is in the nature of a safety valve which the legislature wisely provided in order that, in a proper case, the public interests and those of an owner of land might be fairly adjusted without undue disturbance to the general welfare. It is therefore our opinion that in the instant case the board had the power to grant Lennon's application if, on competent evidence, it found that the exception sought by him was not unduly contrary to the ordinance provisions for the preservation of the common interests.

In addition to the claims that a funeral home on Lennon's premises would depreciate the value of neighboring property and would increase the danger from vehicular traffic, the real ground of petitioners' main objection appears to be that the location and operation of a funeral home on those premises would bring into the community an element which would affect adversely the health and happiness of nearby residents. The factual issues thus raised were the subject of conflicting evidence. What effect such a home, when properly conducted under reasonable restrictions in the general interests, might have upon the health of a person of ordinary sensibility, and the question of whether it reasonably can be located and operated in a particular neighborhood without unduly conflicting with the public welfare as expressed in a zoning ordinance, are considerations which may be the subject of different and opposite opinions. These are questions of fact, however, that were intended by the statute and ordinance to be determined, at least in the first instance, by those who constituted the board of review.

In a case like the one under consideration, it is the well-settled law of this state that the decision of a zoning board of review will not be set aside unless it clearly appears that the board acted arbitrarily or abused its discretion. *Potter* v. *Zoning Board of Review of Cranston,* 65 R. I. 286. Upon the conflicting evidence in the record before us, and considering the conditions which the board attached as to the manner in which Lennon might use his residence as a funeral home, we are of the opinion that it does not clearly appear that the respondent board acted arbitrarily or abused its discretion in granting the application.

The decision of the respondent board is affirmed in each case.