238 A.2d 387 (1968)
Muriel S. PACKHAM
v.
ZONING BOARD OF REVIEW OF the CITY OF CRANSTON.
No. 145-M. P.
Supreme Court of Rhode Island.
February 21, 1968.
Burton Salk, Joel Robinson, for petitioner.
Jeremiah S. Jeremiah, Jr., Assistant City Solicitor, for respondent.

OPINION
ROBERTS, Chief Justice.
This is a petition for certiorari brought to review a decision of the zoning board *388 of review of the city of Cranston granting permission to erect a gasoline service station on a parcel of land presently zoned C-2 for commercial uses located on Narragansett boulevard in that city. The writ, issued, and pursuant thereto the respondent board has returned the record in the case to this court.
It appears therefrom that the premises under consideration are located at 1052-1054 Narragansett boulevard and are identified as lots 443 and 444 on assessor's plat No. 2 of the city of Cranston. In the application, the applicant is the Sun Oil Company of Terminal Road, Providence, while the owner of lot 444 is stated to be "Sun Oil Company" and the owner of lot 443 "Sun Oil Co. (By Agreement)." The application is executed only by the Sun Oil Company.
There is evidence in the record adduced through one Milton C. Matteson, a representative of Sun Oil Company, that lot 443 is owned by a person he identified only as "Asadoorian" and that Sun proposes to acquire this lot if the board grants the exception here applied for. In short, it is clear from the record that at the time of the application, Sun Oil Company was the owner of lot 444 and the only applicant for the exception, and that the exception was intended to apply to lots 444 and 443, if granted.
It appears from the record that the board made an inspection of the two lots and observed that the present gasoline station located on lot 444 is small and has limited off-street parking facilities; that the old dwelling house located on lot 443 is badly in need of repair; that the commercial uses in the immediate neighborhood include several markets, a dry cleaning establishment, a doughnut shop, and a gasoline station; and that the flow of traffic on Narragansett boulevard is steady and heavy but not congested. The board then went on to find that the proposed use would be in harmony with the character of the neighborhood and appropriate to the uses and buildings authorized in the district; that it would serve the convenience and welfare of the public; that the appropriate use of neighboring property would not be substantially or permanently injured; and that the granting of the application would be in the spirit of the ordinance and do substantial justice. Upon these findings the board voted to grant the exception covering both lots 444 and 443.
In this court the prime issue is whether the board had authority to grant an exception applicable to lot 443, the record not disclosing that Sun was the owner of lot 443, or whether in the circumstances Sun had standing to apply for a change in the zoning regulations applicable to lot 443.
The respondent board concedes that at the time of the application, title to lot 443 was not in the applicant Sun but was in one Satenig Asadoorian, but argues that there was in existence at that time an agreement to purchase the Asadoorian property, that is, lot 443, if the exception were granted. In the transcript there is testimony tending to establish that the Sun Oil Company intended to purchase lot 443 upon approval of its application for an exception by the respondent board.
It must be noted that this is not a case involving an application for a variance pursuant to § 45-24-19 (c), wherein the applicant is without some right, title, or interest in the land under consideration. The want of standing in the applicant in such cases to apply for such relief rests upon the theory that hardship within the meaning of the provisions of the enabling act cannot be incurred by a person who is without some right, title, or interest in the property to which the application relates. Tripp v. Zoning Board of Review, 84 R.I. 262, 123 A.2d 144. See Staller v. Zoning Board of Review, 100 R.I. 340, 215 A.2d 418.
We have, however, passed on some aspects of the problem of the standing of one to apply for an application for an exception prescribed in an ordinance who is without right, title, or interest in the land to which an application would apply. We are not *389 aware that any of these cases was decisive of that issue.
The respondent appears to place some reliance on the decision of this court in Dunham v. Zoning Board, 68 R.I. 88, 26 A.2d 614. In that case a public utility had applied for an exception that would permit the erection of new plant facilities on land not owned by it but with respect to which it held an option to purchase. However, the record clearly disclosed that the owner of the land had joined in the application with the utility, and this court held that in those circumstances the board had authority to grant the exception. In the instant case, despite the contentions of respondent, the record is clear that the owner of lot 443 did not join in the application.
In Tramonti v. Zoning Board of Review, 93 R.I. 131, 172 A.2d 93, an application for an exception failed to make any formal proof of its ownership of the land to which the exception would apply. On an appeal to this court the petitioner argued that this left the board without authority to grant the exception. However, this court, after scrutinizing the record closely, held that there was ample evidence contained in the record to establish that the applicant was in fact the owner of the land.
We also considered an aspect of this issue in Dimitri v. Zoning Board of Review, 61 R.I. 325, 200 Atl. 963. However, in that case we established an appellate rule. There an applicant who had been denied a permit appealed to this court under § 45-24-20 of the enabling act, which provides, in part, that such appeals shall be brought by persons aggrieved by an order of the respondent board.
In Dimitri we held that it was the burden of such an applicant to establish the jurisdictional facts that would disclose his aggrievement by the order of the board. We went on to hold that one having no right, title, or interest in the land to which an exception would apply could not be aggrieved under that provision of the statute by the denial of a permit.
The enabling act contains no express provision conferring standing on any particular person to claim either a variance or an exception, and for this reason, as we did in considering the standing to claim a variance, we attach significance to the purpose for which exceptions are established. In Buckminster v. Zoning Board of Review, 69 R.I. 396, 33 A.2d 199, we said in reference to those provisions of the enabling act prescribing the establishment of exceptions within the terms of an ordinance: "This mandatory requirement of the statute is in the nature of a safety valve which the legislature wisely provided in order that, in a proper case, the public interests and those of an owner of land might be fairly adjusted without undue disturbance to the general welfare." It appears to be clear then that one without any right, title, or interest in the land can have no interest to be adjusted with the interests of the public. It is then our opinion that the legislature contemplated that standing to obtain an exception would be conferred upon those who have some right, title, or interest in the land.
The question remains then as to what constitutes a sufficient interest in land apart from ownership to confer standing to obtain an exception. Our own cases are of little assistance in this respect. In Ralston Purina Co. v. Zoning Board, 64 R.I. 197, 12 A.2d 219, we held that a lessee has standing to appeal a decision of a zoning board denying a permit to erect a building, but in Gallagher v. Zoning Board of Review, 95 R.I. 225, 186 A.2d 325, we held that a tenant at sufferance did not have standing to apply for a variance or exception and made it clear that in Ralston we did not consider standing to apply for a variance or an exception. In Tripp v. Zoning Board of Review, supra, we noted that an applicant for a variance merely described himself as the holder of an option to purchase without revealing any of the terms or conditions contained in the option. We went on to hold that "The applicant is clearly nothing more than the holder of a mere option to *390 purchase real estate and, in the absence of evidence that the option was exercised in accordance with its precise terms, he must be held to be without any right, title or interest in the property optioned."
Recently in Shulman v. Zoning Board of Appeals, 154 Conn. 426, 226 A.2d 380, 382, the Connecticut court said: "The general rule, which applies in the absence of a specific provision to the contrary, is that one who has contracted to purchase property has standing to apply for a special exception or a variance governing its use." The court went on to point out that the applicant, while not the owner of the property, had a contract to purchase the premises from its present owner and held that absent some specific provision in the zoning ordinance to the contrary, such a contract was all that was required to confer standing. It would appear from an examination of the opinion that there was a binding contract to buy.
It would serve no useful purpose, however, for this court to further analyze the cases dealing with this issue because the record in the instant case fails to disclose the precise nature of the agreement between Sun and Asadoorian for the sale of the land if relief from the zoning regulations were to be granted. The record discloses only that some form of agreement had been reached, and, as we have noted, the respondent attempts to argue that the agreement was to be binding upon such a grant of relief. There is nothing in the record to support this argument, and in all the circumstances we must conclude that the applicant has failed to adduce evidence from which its standing to obtain the exception could be established. However, because it is clear that some agreement had been entered into, we are persuaded that the ends of justice would best be served if, in quashing the instant record, we did so without prejudice to the right of the applicant to again apply for an exception and, to the extent that it is able, establish the character of the agreement.
The petition for certiorari is granted, the decision is quashed without prejudice to the right of the applicant to again apply to the respondent board for relief under the terms of the ordinance, and the record certified is ordered sent back to the board.