DECISION
John and Jeannette Bliss, Dennis and Rita Piedmonte, Annette Welsh, Lee Blaise, et al. (collectively, "Appellants") appeal from a decision of the Woonsocket Zoning Board of Review ("Zoning Board"), sitting as the Board of Appeal ("Board of Appeal"), upholding a decision of the Woonsocket Planning Board ("Planning Board") that granted preliminary plan approval to Wal-Mart Real Estate Business Trust ("Wal-Mart") for a proposed expansion of its existing Woonsocket facility. Jurisdiction is pursuant to G.L. 1956 § 45-23-71. *Page 2 
 I Facts and Travel
In 1993, Wal-Mart commenced operation of a store located at 1919 Diamond Hill Road in the City of Woonsocket, Rhode Island. The store is situated on a parcel of land known as Tax Assessor's Plat 52, Lot 6. The lot is located in a C-2 Major Commercial District. (Zoning Ordinance for the City of Woonsocket, § 8.2.)
Nearly eight years after the Woonsocket store opened, Wal-Mart sought to construct a fueling station on the same lot. Pursuant to the Zoning Ordinance for the City of Woonsocket ("the Ordinance"), fuel stations are authorized in C-2 districts only by way of a special-use permit issued by the Zoning Board of Review. Id. at § 4.6-1. Accordingly, Wal-Mart submitted an application to the Zoning Board of Review seeking the requisite special-use permit. In addition to the application itself, Wal-Mart submitted a number of other documents for the Zoning Board to consider during its deliberations. Among those documents were copies of the "immediate site plan" of the proposed fuel station, as well as "contextual site plans" for the larger Wal-Mart retail area. (Ex. 22.) During the application process, no effort was ever undertaken to subdivide the site of the proposed fueling station from the rest of the lot.
A hearing on the special-use permit application was held before the Zoning Board of Review on June 5, 2001 ("the 2001 hearing"). At the hearing, the Zoning Board approved a special-use permit for the construction of a fuel station on the subject lot; however, the Zoning Board conditioned its approval on "[s]trict compliance with plans and testimony as presented to the Board" at the 2001 hearing. Subsequently, a fuel *Page 3 
station was constructed on the subject lot in accordance with the conditional approval granted by the Zoning Board.
Several years later, Wal-Mart commenced an effort to purchase a number of additional parcels located in close proximity to the site of the Wal-Mart building and fuel station. Specifically, Wal-Mart contemplated acquisition of Plat 52, Lot 7, the site of an erstwhile roller skating rink ("the roller rink lot"), as well as portions of Plat 53, Lot 5; Plat 53, Lot 30; and Plat 57, Lot 88, all owned by the City of Woonsocket ("the City land"). (See Ex. 25.) Eventually, Wal-Mart entered into purchase agreements with both the owner of the roller rink lot and the City of Woonsocket. Id. The purchase agreements for those properties contained provisions stating that Wal-Mart's obligation to close the contemplated sales was contingent upon, inter alia, Wal-Mart's ability to obtain "all municipal, state and federal approvals required to enable Wal-Mart to construct an . . . expansion of the existing Wal-Mart store. . . ." Id.
In July of 2007, Wal-Mart filed a Major Subdivision/Major Land Development Application with the Woonsocket Planning Board, wherein it formally proposed expanding the size of the Wal-Mart building. (Ex. 1.) Specifically, the application proposed merging the existing Wal-Mart lot with the adjacent roller rink lot and the City land. Id. As contemplated on the post-merger lot, the expansion plan complied in all respects with the applicable provisions of the Woonsocket Subdivision and Land Development Regulations and the Woonsocket Zoning Ordinance, save the instant dispute over interpretation of the condition attached to the underlying special-use permit. (See Ex. 15; Ex. 16.) *Page 4 
Pursuant to G.L. § 45-23-39(b), [1] Wal-Mart submitted a copy of a master plan to the Woonsocket Planning Board for its consideration. The Planning Board held properly noticed hearings for public comment regarding the master plan on August 7 and August 28, 2007. (Ex. 6.) At the August 28th meeting, the Planning Board unanimously approved the master plan for Wal-Mart's expansion. Id.
On November 8, 2007, Woonsocket's City Planner, Catherine Ady ("Ady"), received copies of the preliminary plan for the proposed lot consolidation and building expansion. (Ex. 2.) The following day, Ady distributed copies of the preliminary plan to a number of local officials, requesting written comments on the proposal. (Ex. 21.) Woonsocket Zoning Officer Robert Ericson ("Ericson") was among the officials on the preliminary plan distribution list. Id. After reviewing the proposal, Ericson sent to the City Planner a memorandum which stated that "[t]he plan meets all applicable zoning requirements." (Ex. 16.) On receipt of Ericson's memo, Ady mailed official notices to various state agencies and adjacent municipalities informing them that a hearing before the Woonsocket Planning Board had been scheduled for December 4, 2007, in order to allow for oral and written comments from the public concerning the preliminary plan for Wal-Mart's proposed expansion. (Ex. 24.)
The day of the public hearing, Ady received a letter from Appellants' attorney, Kevin M. Hayes ("Hayes"), objecting to the scheduled Planning Board meeting. Hayes's letter asserted that Wal-Mart's preliminary plan was improperly before the Planning *Page 5 
Board because of a deviation from the procedure prescribed by § 45-23-61.[2] Hayes's assertion was predicated on his contention that Wal-Mart was required to obtain a new special-use permit for the fuel station because the proposed expansion to the Wal-Mart building was not in "strict compliance" with the plans and testimony presented to the Zoning Board at the 2001 hearing.
At the public hearing that evening, the letter from Attorney Hayes was read into the record. (Ex. 6.) Consequently, the Planning Board postponed its scheduled vote on the Wal-Mart application. Id. The following day, after reviewing Attorney Hayes's contentions, Zoning Officer Ericson sent to the City Planner a memo wherein Ericson set forth his opinion that Wal-Mart's proposed expansion of its building amounted to "subsequent changes in [the] larger contextual site plan" that "do not establish a basis for requiring a new or amended special use permit." (Ex. 22.)
Subsequently, a special meeting of the Planning Board was held on December 18, 2007. At the conclusion of the special meeting, the Woonsocket Planning Board unanimously approved the preliminary plan. (Ex. 6.) One day later, the Planning Board issued its written decision in the instant matter.[3] (Ex. 26.) In response, Appellants sent a letter to Zoning Officer Ericson, informing him of their intent to appeal the decision of the Planning Board. (Ex. 9.) *Page 6 
On February 11, 2008, the Board of Appeal convened a hearing on the Appellants' appeal. At the hearing, Attorney Hayes asserted that the Planning Board improperly approved Wal-Mart's preliminary plan because Wal-Mart failed to obtain a new special-use permit for the fuel station from the Zoning Board before presenting the preliminary plan to the Planning Board for its approval. (Ex. 27.) Despite the continued concerns of Attorney Hayes, the Board of Appeal unanimously voted to uphold the Planning Board's approval of Wal-Mart's preliminary plan.Id. The following day, the Woonsocket City Clerk received and recorded a copy of the Board of Appeal's written decision in the instant matter.Id.
On February 27, 2008, Appellants filed a timely appeal of the Board of Appeal's decision pursuant to § 42-23-71. Before this Court, Appellants seek reversal of the Board of Appeal's decision, asserting that it was made upon unlawful procedure and affected by error of law. Conversely, Wal-Mart and the Board of Appeal contend that this Court should affirm the Board's decision because it rests on competent evidence in the record.
 II Standard of Review
Under the Development Review Act ("the Act"), § 45-23-25 et seq., review of a planning board's decision is limited. Section 45-23-70
governs the standard of administrative appellate review and provides that a zoning board reviewing the decision of a planning board may reverse the lower body only if the zoning board finds that there was "prejudicial procedural error, clear error, or a lack of support by the weight of the evidence in the record." Section 45-23-70(a). Section 45-23-71 of the Act governs *Page 7 
appeals thereafter to Superior Court from decisions of a board of appeal. Subsection (c) of § 45-23-71 provides:
 The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Hence, judicial review of planning board decisions is not denovo. Munroe v. Town of E. Greenwich, 733 A.2d 703, 705 (R.I. 1999) (citing Kirby v. Planning Bd. of Review of Middletown, 634 A.2d 285, 290
(R.I. 1993)). Rather, § 45-23-71(c) authorizes the Superior Court to review such decisions utilizing the "`traditional judicial review' standard that is applied in administrative agency actions."Id. Accordingly, the Superior Court's "review is confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law." Id. (quotingKirby, 634 A.2d at 290). *Page 8 
 III Analysis A Conditionally Granted Special-Use Permits
Under the Rhode Island Zoning Enabling Act, G.L. 1956 § 45-24-27et seq., a zoning board of review is empowered to issue a special-use permit, formerly known as a special exception, pursuant to the provisions of a local zoning ordinance. See Section 45-24-42. The Rhode Island Supreme Court has recognized that the function of special-use permits is "`to alleviate the burden of use restrictions on land that cannot be related reasonably to the public interest. . . .'" Warner v.Board of Review of City of Newport, 104 R.I. 207, 212-13, 243 A.2d 92,95 (1968) (quoting Center Realty Corp. v. Zoning Board of Review,96 R.I. 76, 80, 189 A.2d 347, 350 (1963)). Put another way, a zoning board's ability to issue a special-use permit "`is in the nature of a safety valve which the legislature wisely provided in order that, in a proper case, the public interests and those of an owner of land might be fairly adjusted without undue disturbance to the general welfare.'"Id. (quoting Buckminster v. Zoning Board of Review, 69 R.I. 396, 401,33 A.2d 199, 202 (1943)).
Section 15 of the Woonsocket Zoning Ordinance sets forth the standards for obtaining a special-use permit in the City of Woonsocket. Specifically, § 15.8-2 states, in relevant part, that the Zoning Board may grant a special-use permit if the Board concludes:
 (1) That the special use shall be in harmony with the general purpose and intent of this ordinance; *Page 9 
 (2) That the special use is reasonably necessary for the convenience or welfare of the public;
 (3) That all appropriate conditions and safeguards are included in the special use permit in the form of stipulations. . . .
If a zoning board finds compliance with the standards or requisites set forth in the applicable ordinance, then the right to a special-use permit exists, "subject to such safeguarding conditions which [a board] may impose by reason of the nature, location, and incidents of the particular use." 3 Rathkopf, The Law of Zoning and Planning § 61.6.
In accordance with this maxim, § 15.9 of the Ordinance, which substantially mirrors the language of § 45-24-43, states that:
 The zoning board of review may apply such special conditions that may, in the opinion of the board, be required to promote the intent and purposes of the comprehensive plan and the zoning ordinance. Failure to abide by any special conditions attached to a grant shall constitute a zoning violation. Such special conditions shall be based on competent credible evidence on the record, shall be incorporated into the decision, and may include, without limitation, provisions for:
 (1) Minimizing adverse impact of the development upon other land, including the type, intensity, design, and performance or activities;
 (2) Controlling the sequence of development, including when it must be commenced and completed;
 (3) Controlling the duration of use or development and the time within which any temporary structure must be removed;
 (4) Assuring satisfactory installation and maintenance or required public improvements;
 (5) Designating the exact location and nature of development; and *Page 10 
 (6) Establishing detailed records by submission of drawings, maps, plats, or specifications.
Moreover, our Supreme Court has consistently held that the zoning enabling statute "confers upon a board of review authority to impose reasonable conditions upon the grant of a variance [or exception]."Town of Warren v. Frost, 111 R.I. 217, 220, 301 A.2d 572, 573-74 (R.I. 1973) (citing Guenther v. Zoning Board of Review, 85 R.I. 37,125 A.2d 214 (1956); Woodbury v. Zoning Board of Review, 78 R.I. 319, 82 A.2d 164
(1951)).
Pursuant to § 4.6-1 of the Ordinance, fuel stations are authorized in C-2 Major Commercial Districts only by way of a special-use permit issued by the Zoning Board of Review. Courts have long sustained the classification of fuel stations as special uses because they "are necessary to our present-day life, yet involve risks to the safety of persons and property." Socony Mobil Oil Co. v. Ocean Tp.,56 N.J.Super. 310, 320, 153 A.2d 67, 72 (1959) (citing Schmidt v. Board of Adjustmentof City of Newark, 9 N.J. 405, 422, 88 A.2d 607, 615 (1952)). Because of these concomitant risks, "lawful conditions may be prescribed for the construction and operation of [a fuel station.]" 6 Yokely, Zoning Lawand Practice § 38-7; see also Socony Mobil Oil Co. v. Zoning Board ofAppeals of Enfield, 153 Conn. 257, 216 A.2d 201 (1965); Rasmussen v.Village of Bensenville, 56 Ill. App. 2d 119, 205 N.E.2d 631 (1965) (conditions requiring construction of fuel stations a certain distance from schools and churches were appropriate).
Nevertheless, though a zoning board acts well within the scope of its authority in attaching conditions to the grant of a special-use permit, the conditions imposed must be sufficiently specific. Zoning authorities have noted that "conditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use *Page 11 
of land, and cannot incorporate by reference statements made by an applicant at a hearing." 8 Rohan, Zoning and Land Use Controls
§ 44.05[1]. Rhode Island case law accords with this understanding of conditionally granted special-use permits. Our Supreme Court, in evaluating whether a board of review disclosed an intention to condition its grant of a special-use permit, has stated that "conditions on a grant permitting a use of the land would be effective only when specifically and clearly stated in the record. . . . Unless [conditions] are specifically and separately enumerated by the [zoning] board, the material grounds of the decision would be left to speculation."Frost, 301 A.2d at 574 (citing Strauss v. Zoning Board of Review,72 R.I. 107, 48 A.2d 349 (1946)).
 B Issuance of the 2001 Conditionally Granted Special-UsePermit
In the instant matter, the Woonsocket Zoning Board granted Wal-Mart's 2001 request for a special-use permit to construct a fuel station on Tax Assessor's Plat 52, Lot 6. However, according to the minutes from the 2001 Zoning Board hearing, the Board conditioned its approval on "[s]trict compliance with plans and testimony as presented to the Board." Notably, the minutes from that hearing provide no other details with respect to the plans and testimony presented to the Board that evening or on any other occasion.
Section 45-24-61(a) of the Zoning Enabling Act provides that "[f]or any proceeding in which the right of appeal lies to the superior or supreme court, the zoning board of review shall have the minutes taken either by a competent stenographer or recorded by a sound-recording device." This language does not compel a board to keep a formal transcript of a proceeding. Rather, the plain meaning of this provision requires a *Page 12 
board only to keep minutes. Nevertheless, our Supreme Court has repeatedly emphasized that "zoning boards of review must record their proceedings in sufficient detail to allow a reviewing court to ascertain the grounds of decision." Holmes v. Dowling, 413 A.2d 95, 98 (R.I. 1980); see also Travers v. Zoning Board of Review of Bristol,101 R.I. 510, 514, 225 A.2d 222, 224 (1967); Robinson v. Town Council ofNarragansett, 60 R.I. 422, 437, 199 A. 308, 314 (1938).
In addition, with respect to decisions arising out of such proceedings, the Court has stated that "a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of facts and reasons for the action taken." Sciacca v. Caruso,769 A.2d 578, 585 (R.I. 2001) (quoting Irish Partnership v. Rommel, 518 A.2d 356,358 (R.I. 1986)). Such findings must be "factual rather than conclusional, and the application of legal principles must be something more than the recital of a litany." Bernuth v. Zoning Bd. of Review ofthe Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001) (quotingIrish P'ship, 518 A.2d at 358-59). When a board fails to state its findings of fact, "the [C]ourt will not search the record for supporting evidence or decide for itself what is proper in the circumstances."Id. (quoting Irish P'ship, 518 A.2d at 359).
Our Supreme Court recently reinforced the import of this obligation inState v. Germane, No. 2006-169-C.A., slip op. (R.I. filed June 2, 2009). Therein, the Court stated that "administrative bodies should bemeticulous about documenting the fact-finding process that underlies their decision." Id. at 49 (emphasis added). The Court also elaborated on the rationales underlying this obligation, noting that
 [t]he reasons [for documenting the fact finding process] have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties *Page 13 
plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction. Id. (citations omitted).
Our Supreme Court continued:
 It is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. The court must know why. Id. at n. 44 (quoting Geraud v. Schrader, 531 P.2d 872, 879 (Wyo. 1975)) (emphasis in original).
The minutes from the 2001 Zoning Board hearing specify that the Board's reason for granting Wal-Mart's application for a special-use permit was that the permit "will serve the convenience and welfare of the general public [and] will give the owner the full beneficial use of the property." While this declaration tracks language from § 15.8-2 of the Ordinance, the statement is wholly conclusional and "failed to apply the proper legal principles, thereby making judicial review of the board's work impossible." Irish P'ship, 518 A.2d at 358. Moreover, the minutes from the 2001 hearing fail to recount any testimony or discussion that transpired at the hearing, thereby failing to preserve any substantive information relating to the grant of the special-use permit.[4] Consequently, this Court is unable to determine what constitutes "[s]trict compliance" with the "plans and testimony as presented to the Board." *Page 14 
The filing of a formal written decision might have fleshed out the Board's "findings of facts and reasons for the action taken,"Sciacca, 769 A.2d at 585; however, based on the administrative record provided, no separate written decision relating to the grant of the special-use permit was ever drafted. Instead, the minutes from the Zoning Board hearing were filed with the Woonsocket City Clerk's office on June 5, 2001, serving as the official municipal decision. Though the minutes from the 2001 Zoning Board meeting arguably comply with the statutory mandate set forth in § 45-24-61(a), the minutes surely fail to facilitate any meaningful review of the proceedings as required by our Supreme Court. See Bernuth, 770 A.2d at 401.
These principles notwithstanding, the appropriate time for a challenge to the validity of the 2001 Zoning Board decision has passed. Pursuant to § 45-24-69, "[a]n aggrieved party may appeal a decision of the zoning board of review to the superior court . . . by filing a complaint stating the reasons of appeal within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk." Moreover, the appropriate vehicle to challenge an alleged violation of a conditionally granted special-use permit is an enforcement action.See 101A C.J.S., Zoning and Land Planning § 307 ("The proper way to raise the question whether [a] condition has been violated is to petition for an order forbidding any improper use of the premises."). Accordingly, this Court lacks jurisdiction to evaluate the validity of the 2001 conditionally granted special-use permit. *Page 15 
 C Planning Board Approval of the 2007 Preliminary Plan
Presently before this Court is Appellants' challenge to the validity of the Planning Board's 2007 decision granting preliminary plan approval to Wal-Mart's proposed lot mergers and expansion plan, a decision which rested in large part on the Planning Board's interpretation of the generic condition attached to the 2001 special-use permit.[5]
Appellants' sole argument on appeal is that the 2007 Planning Board decision was made upon unlawful procedure and affected by error of law because the Planning Board approved the preliminary plan without first requiring Wal-Mart to petition the Zoning Board for a new special-use permit. However, because this Court has determined that the procedural prescriptions of § 45-23-61(a)(2) — requiring certain subdivision applicants to obtain a conditional special-use permit from the zoning board and then return to the planning board for subsequent required approvals — are inapplicable to the applicants in the instant matter, it cannot be said that the Planning Board's decision to approve Wal-Mart's preliminary plan rests upon unlawful procedure.
Judicial review of planning board decisions is not de novo.Munroe, 733 A.2d at 705 (citing Kirby 634 A.2d at 290). Rather, § 45-23-71(c) authorizes the Superior Court to review such decisions utilizing the "`traditional judicial review' standard that is applied in administrative agency actions." Id. Therefore, this Court is "confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law."Id. (quoting Kirby, 634 A.2d at 290). It follows that this Court may not substitute its judgment for that of the agency as to the *Page 16 
weight of the evidence on questions of fact. Interstate Navigation Co.v. Div. of Pub. Utils. Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Baker v. Dept. ofEmployment Training Bd. of Review, 637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)).
The municipal agencies in this case utilize a two-tier review process, in which applications seeking approval for major land developments or subdivisions are heard first by the Planning Board, which issues a written decision that is filed with the city clerk. Parties adversely affected by the Planning Board's decision may file an appeal with the Zoning Board of Review sitting as the Board of Appeal. (City of Woonsocket Subdivision Land Development Regulations, § 13.2.) The Board of Appeal considers the decision, along with any further briefs or arguments, and then renders its own decision. Id. at § 13.3. In the context of administrative appeals, this two-step procedure has been likened to a funnel. Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-08 (R.I. 1993). Similar to a hearing officer in the administrative forum, the Planning Board, at the first level of review, sits "as if at the mouth of the funnel" and analyzes all of the evidence, opinions, and issues. Id. at 207. The Board of Appeal, stationed at the "discharge end" of the funnel, the second level of review, does not receive the information considered by the Planning Board firsthand. Id. at 207-08. Our Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Id. at 208. *Page 17 
In the instant matter, after conducting a review of Wal-Mart's preliminary plan proposal, Zoning Officer Ericson sent to the City Planner a memorandum which stated that "[t]he [preliminary] plan meets all applicable zoning requirements." (Ex. 16.) In addition, upon reconsideration of the preliminary plan proposal following the December 4, 2007 Planning Board hearing, Zoning Officer Ericson sent to the City Planner a second memo wherein Ericson set forth his position that Wal-Mart's proposed expansion amounted to "subsequent changes in [the] larger contextual site plan" that "do not establish a basis for requiring a new or amended special use permit." (Ex. 22.) Accordingly, Ericson determined that the preliminary plan presented to the Planning Board was in harmony with the Woonsocket Zoning Ordinance. (See Ex. 16; Ex. 22.)
In the administrative context, our Supreme Court has cautioned that some deference should be paid "to a determination by [a municipal official], [but] not blind deference." New EnglandExpedition-Providence, LLC v. City of Providence, 773 A.2d 259, 263
(R.I. 2001). Nevertheless, courts must "give deference to an agency's interpretation of an ambiguous statute [or ordinance] that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v.Rhode Island Dep't of Labor and Training Bd. of Review, 822 A.2d 164,169 (R.I. 2003) (citing In re Lallo, 768 A.2d 921, 926 (R.I. 2001));see also Lyman v. Employees' Retirement System of the State of RhodeIsland, 693 A.2d 1030, 1031 (R.I. 1997). As such, the Court reviews questions of statutory interpretation in a de novo manner.Germane, slip op. at 25 (citing Rison v. Air Filter Systems, Inc.,707 A.2d 675, 678 (R.I. 1998)). *Page 18 
In the case at bar, the Planning Board's formal approval of Wal-Mart's preliminary plan was issued in the form of a six-page document titled "Findings of Fact Decision" dated December 19, 2007. (Ex. 26.) Therein, the Planning Board stated the following as one of its twenty-three enumerated findings of fact:
 The Zoning Officer has had the opportunity to review the complete record and plans of this application and of the special use permit from 2001 and has provided comment to the Planning Board, addressing the [special-use permit] issue raised by [the Appellants]. The Zoning Officer has stated that the plans are in compliance with the Zoning Ordinance and that no new or amended special use permit would be required. The Planning Board accepts and elects to follow the Zoning Officer's interpretation and opinion on this matter inasmuch as the Zoning Officer has had access to and has been able to review both the zoning special use permit application file and the major land development application file and plans. Id. at 4-5.
Pursuant to this finding of fact, the Planning Board arrived at the following conclusion of law:
 The proposed development is in compliance with the standards and provisions of the City of Woonsocket, RI Zoning Ordinance of December 31, 1994, as amended through January 23, 2002. The Zoning Officer of the City of Woonsocket reviewed the preliminary plan submission and provided comment to the Board in a memorandum; the Zoning Officer reported that the "plan meets all applicable zoning requirements," including parking, loading, setbacks, truck traffic, and screening. The Zoning Officer also provided comment that the proposed project does not require a new or amended special use permit for the existing fuel station on the project site. Id. at 5.
Consequently, the Planning Board voted 5-0 to approve Wal-Mart's petition for preliminary plan approval for its Major Subdivision/Major Land Development Application. Id. at 6. *Page 19 
Appellants' appeal of the Planning Board's decision to the Board of Appeal culminated in the issuance of a second written decision, filed with the Woonsocket City Clerk on February 12, 2007, wherein the Board of Appeal upheld the decision of the Planning Board. (Ex. 27.) In evaluating the Planning Board's conclusion that Wal-Mart was not required to obtain a new or amended conditional special-use permit from the Zoning Board, the three-page Board of Appeal decision states:
 The record shows that neither the Zoning Officer nor the Planning Board recommended that Wal-Mart seek a new special use permit as a condition of the Wal-Mart expansion Preliminary Plan approval. In fact, the Zoning Officer wrote a memo to the City Planner [stating] that "changes in the larger contextual site plan do not establish a basis for requiring a new or amended special use permit." Id. at 3.
Further, in addressing the Appellants' contention that the Planning Board committed procedural error by issuing a decision in contravention of state law regarding the proper sequence of approvals, the Board of Appeal concluded that "the Planning Board did not require a new special use permit, and the zoning officer advised that it was not needed. Absent the need for a new special use permit, the Appellants' contention has no merit." Id. at 4.
On the record before it, this Court cannot determine whether Wal-Mart's present expansion plans violate the terms of the conditional special-use permit issued by the Zoning Board in 2001 because the terseness of the minutes and decision underlying its issuance, which failed to provide any detail with respect to the "plans and testimony" presented to the Board in 2001, renders judicial review of the condition imposed impossible. See Section III B, supra; Irish P'ship,518 A.2d at 358; see also Frost, 301 A.2d at 574 ("conditions on a grant permitting a use of the land would be effective only *Page 20 
when specifically and clearly stated in the record. . . ."). If the Appellants believe that expansion of the existing Wal-Mart building constitutes non-compliance with the terms of the 2001 conditional special-use permit, they may consider an enforcement action upon the commencement of acts believed to amount to such a violation.See 101A C.J.S., Zoning and Land Planning § 307 ("The proper way to raise the question [of] whether [a] condition has been violated is to petition for an order forbidding any improper use of the premises.").
Because this Court is unable to find that Wal-Mart's expansion plans constitute a violation of the terms of the underlying conditional special-use permit, this Court cannot deem Wal-Mart a subdivision applicant that "requires both a special-use permit under the local zoning ordinance and planning board approval. . . ." Section 45-23-61(a)(2). The Planning Board's determination that § 45-23-61(a)(2) was inapplicable to the instant matter was "neither clearly erroneous nor unauthorized." Arnold, 822 A.2d at 169 (citations omitted). Consequently, this Court must "give deference to [the Planning Board's] interpretation of . . . [a] statute that it has been charged with administering and enforcing. . . ." Id. Accordingly, the procedural prescriptions of § 45-23-61(a)(2), mandating that certain applicants "obtain a conditional special-use permit from the zoning board and then return to the planning board for subsequent required approval(s)," are inapplicable to the instant matter. That being the case, it cannot be said that the Planning Board's decision to approve Wal-Mart's preliminary plan arose out of unlawful procedure.
Furthermore, since the Major Subdivision/Major Land Development Application proposing lot consolidation and expansion of the existing Wal-Mart building comports *Page 21 
with all other relevant provisions of the Woonsocket Subdivision and Land Development Regulations and the Woonsocket Zoning Ordinance, the Planning Board's decision to approve Wal-Mart's preliminary plan was not affected by error of law. Therefore, the decision of the Board of Appeal is not clearly erroneous and must be affirmed.
 IV Conclusion
After review of the entire record, this Court concludes that the decision of the Board of Appeal, affirming the Planning Board's approval of Wal-Mart's preliminary plan, was not made upon unlawful procedure, affected by error of law, or clearly erroneous. Substantial rights of the parties were not prejudiced by the decision. Accordingly, the Appellants' appeal is denied, and the decision of the Board of Appeal, upholding the Planning Board's decision, is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] Section 45-23-39(b) provides, in pertinent part, "[m]ajor plan review consists of three stages of review, master plan, preliminary plan and final plan. . . ."
[2] Section 45-23-61(a)(2) provides:
 Where an applicant requires both a special-use permit under the local zoning ordinance and planning board approval, the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain a conditional special-use permit from the zoning board, and then return to the planning board for subsequent required approval(s).
[3] Thereafter, the Planning Board granted final plan approval to the Wal-Mart expansion plan on December 28, 2008.
[4] Appellants aver that the special-use permit was granted predicated on specifications included in the contextual site plan presented to the Zoning Board in 2001. Appellants assert that according to the contextual site plan, upon construction of the fueling station, the development was to have 651 parking spaces. The Court is unable to confirm this assertion because the 2001 contextual site plan, showing the subject lot in its entirety, and the 2001 immediate site plan, detailing only the proposed fuel station, were not included in the administrative record submitted to the Court. Moreover, even if Appellants' assertions regarding the specifications included in the contextual site plan are accurate, the Court remains unable to determine whether the Zoning Board approved the 2001 special-use permit based on the specifications included in the contextual site plan or the specifications of the immediate site plan because of the brusque and conclusory nature of the Zoning Board's written decision. See Bernuth, 770 A.2d at 401 (R.I. 2001).
[5] To reiterate, according to the minutes from the 2001 Zoning Board hearing, the Zoning Board granted Wal-Mart a special-use permit allowing construction of a fuel station on the subject lot, but conditioned its approval on "[s]trict compliance with plans and testimony as presented to the Board" at the 2001 hearing. *Page 1